# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 10, 2014        Decided January 6, 2015

No. 12-5370

JANET HOWARD,
APPELLEE

JOYCE MEGGINSON,
APPELLANT

v.

PENNY SUE PRITZKER, SECRETARY, UNITED STATES
DEPARTMENT OF COMMERCE,
APPELLEE

---

Consolidated with 12-5392

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:05-cv-01968)

---

*Elizabeth C. Bullock*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. On the briefs were *David W. DeBruin*, *Matthew S. Hellman*, and *Matthew S. McKenzie*.

*Brian P. Hudak*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*,

U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS and BROWN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The principal question in this appeal is whether the six-year statute of limitations for suits against the United States, 28 U.S.C. § 2401(a), applies to claims filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended to apply to federal employees, *see id.* § 2000e-16. We hold that it does not. In Title VII, Congress enacted "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976). Concluding that administrative resolution was preferable, Congress imposed an exhaustion requirement without setting a time limit for administrative resolution of an employee's discrimination complaint. Congress also provided that an employee "may file a civil action" for a *de novo* court proceeding within ninety days of receiving notice of final administrative action, or anytime after 180 days have elapsed from the filing of an initial charge. 42 U.S.C. § 2000e-16(c).

In a novel attempt to reconfigure Congress's statutory scheme more than forty years after its enactment, the Commerce Department would impose 28 U.S.C. § 2401(a)'s six-year statute of limitations, regardless of the status of the administrative proceedings. Applying that time limit to truncate Title VII's more lenient limitations period "irreconcilably conflict[s]" with Congress's comprehensive scheme. *Adirondack Med. Ctr v. Sebelius*, 740 F.3d 692, 698 (D.C. Cir. 2014) (internal quotation marks omitted); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012). Federal

employees who, as here, have pursued administrative relief and, six years after their claim first accrued, had an administrative class action provisionally certified and remanded for further consideration would either have to abandon that process or surrender the right to file suit following final administrative action. That election is not part of Congress's scheme and incorporating it would strike a different balance of interests than was chosen by Congress. Accordingly, because "[t]he judicial role is to enforce th[e] congressionally determined balance," *Milner v. Dep't of Navy*, 562 U.S. 562,—, 131 S. Ct. 1259, 1265 n.5 (2011), we hold that 28 U.S.C. § 2401(a) does not apply to Title VII civil actions brought by federal employees, and we reverse the dismissal of appellants' complaint and remand the case to the district court.

## I.

Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*,"to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). Recognizing the need for "a comprehensive solution," *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975), to address "racially stratified job environments" that "disadvantage . . . minority citizens," *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973), Congress adopted a scheme in which the Equal Employment Opportunity Commission ("EEOC") would be able "to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit." *Alexander*, 415 U.S. at 44. Initially applying to private employment, Title VII was amended in 1972 to apply to federal government employees (with exceptions not relevant here). *See* Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, § 11, 86 Stat. 103, 111–13 (codified at 42 U.S.C.

§§ 2000e-16). Congress left the details of the administrative process to the Civil Service Commission, requiring that each "department, agency, or unit shall comply with such rules, regulations, orders, and instructions" issued by it. *Id.* § 2000e-16(b). In 1978, the Commission's functions were transferred to the EEOC, effective January 1979. *See* Presidential Reorganization Plan No. 1 of 1978, 43 Fed. Reg. 19,807, 92 Stat. 3781. Four years after Congress amended Title VII to protect federal employees, the Supreme Court held in the seminal case of *Brown v. General Services Administration*, 425 U.S. at 829, that Congress intended Title VII to be the "exclusive and pre-emptive" means for federal employees to seek redress for unlawful employment discrimination.

In Title VII, as amended, Congress established two time limits for filing a civil action in federal court:

> *Within 90 days* of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section [*i.e.*, most executive agencies, including the armed forces, and certain non-executive offices], or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, . . . or *after one hundred and eighty days* from the filing of the initial charge . . . an employee . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, *may file a civil action* as provided in [42 U.S.C. § 2000e-5(f)–(k)], in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c) (emphasis added).

Janet Howard, who worked at the Department for twenty-five years, from 1983 to 2008, and Joyce Megginson, who began working there in 1971 and was still an employee as of 2014, appeal the dismissal of their complaint on the ground that the district court erred in failing to adhere to Title VII's time limits. In February 1995, Howard and two other employees filed an administrative class complaint alleging "Racial Discrimination against African Americans in the Department of Commerce," as evidenced by "[l]ow performance rating, continued denial of promotion and awards, disparate treatment in job assignment and environment, [and] disparate treatment in recognition and training." Adm. Compl. ¶ 1. They sought equitable and monetary relief. As EEOC regulations required, they filed the complaint with the Department, *see* 29 C.F.R. § 1614.106, which, in turn, referred the complaint to the EEOC for adjudication, *see id.* § 1614.109. Over the next five years, Howard and others defended against attempts to dismiss the complaint, ultimately succeeding in the summer of 2000 upon obtaining a favorable EEOC ruling that called for further administrative consideration. The path to this interim result was not straightforward and involved significant administrative delays.

In June 1995, an administrative law judge ("ALJ") in the EEOC Washington Field Office recommended dismissal of the class discrimination complaint for failure to meet the class certification prerequisites of Federal Rule of Civil Procedure 23(a), which by EEOC regulation apply to administrative proceedings, *see* 29 C.F.R. § 1614.204(a)(2). The Department accepted the recommendation in August 1995; Howard (for the putative class) appealed to the EEOC Office of Federal Operations, *see id.* § 1614.403. Two years later that Office ruled that adequacy of representation was no longer a stumbling block because the putative class had obtained counsel and that the ALJ had failed to consider whether the class complaint

"meets the standards for commonality and typicality under the across-the-board theory." The matter was remanded with instructions to the Department to forward the case to an ALJ for reconsideration. *See Howard v. Daley*, EEOC Doc. No. 01956455, 1997 WL 314807 (June 4, 1997).

Almost two years following the remand, the ALJ found in March 1999 that Howard could not adequately represent the interests of the putative class and remanded for the Department to identify another potential class agent. The Department accepted the recommendation; Howard appealed. Sixteen months later, in July 2000, the EEOC Office of Federal Operations ruled that the ALJ erred in disqualifying Howard as class agent and, upon review of the criteria for class certification, provisionally certified a class and remanded the matter to the Washington Field Office. *See Howard v. Daley*, EEOC Doc. No. 01994518, 2000 WL 1090557 (July 20, 2000).

More than two years later, in December 2002, the Department moved to redefine the size of the class. Howard opposed the motion, and the Department filed a reply. Eight months later, in August 2003, the ALJ summarily granted the motion. Howard moved for reconsideration. When approximately eighteen months had passed without a decision, despite having inquired and received assurances that a decision would be rendered within months, class counsel requested by letter of September 27, 2005, in view of the decade that had elapsed since the initial charge was filed, that the administrative class complaint be dismissed because the class intended to file suit in federal court. On September 30, 2005, the ALJ dismissed the class complaint.

Howard and Megginson, as two of thirteen class representatives, filed a civil action in federal court five days later, on October 5, 2005. The class complaint alleged that the

Department "has maintained a system of racially discriminatory and subjective employment practices with respect to promotions, awards, performance ratings, career-enhancing work assignments, timely training for advancement, and job assignments." Compl. ¶ 4. It sought relief, pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.*, on behalf of the class and the class representatives, for race discrimination and retaliation through injunctive relief, including the "affirmative restructuring of [the Department's] selection and compensation procedures, training and other terms and conditions of employment; back pay; front pay; compensatory and nominal damages; and attorneys fees, costs and expenses." Compl. ¶ 9.

On June 13, 2006, Howard and two other named class representatives filed an amended complaint, dropping the class request for compensatory damages and adding several individual claims. The district court granted the Department's motion to strike the class claims for failure timely to move for class certification and denied the motion to dismiss the individual claims because, as to Howard, the Department had failed to identify any defect requiring that they be stricken, and as to Ms. Megginson, equitable tolling rendered her claims timely. *See Howard v. Gutierrez*, 474 F. Supp. 2d 41, 50, 51–53 (D.D.C. 2007).

On December 11, 2007, Howard, Megginson, and Tanya Ward Jordan, all named class representatives, filed a second amended complaint alleging individual disparate impact claims under Title VII in Count I and a claim under the Rehabilitation Act, 29 U.S.C. §§ 710 *et seq.*, on behalf of Jordan in Count II. The district court dismissed Count II as devoid of factual allegations and speculative and denied the Department's motion to dismiss Howard's and Megginson's individual disparate impact claims for failure to exhaust administrative remedies, as well as the Department's motion to dismiss Megginson's claim as

untimely filed. It also denied the Department's motion to dismiss for failure to state a claim and for summary judgment. *See Howard v. Gutierrez*, 571 F. Supp. 2d 145, 152–59, 162 (D.D.C. 2008). The district court referred the case to a magistrate judge for settlement discussions and appointed counsel.

When settlement efforts failed, Howard and Megginson moved on July 16, 2010 for leave to file a third amended complaint to add claims related to disparate impact, a hostile work environment, and retaliation. The Department moved to dismiss the complaint on the ground that the six-year statute of limitations for non-tort suits against the United States, 28 U.S.C. § 2401(a), barred the suit. The district court agreed, dismissing the second amended complaint for lack of subject matter jurisdiction and denying the motion for leave to file a third amended complaint. *See Howard v. Blank*, 891 F. Supp. 2d 95 (D.D.C. 2012). Ruling that § 2401(a) was jurisdictional, *id.* at 99 (citing *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987)), the district court found that the individual claims pursued in 2005 by Howard and Megginson had accrued in 1995 and by 1998, respectively, when they could have filed suit 180 days after filing their initial charges. *See id.* The district court rejected their arguments that § 2401(a) did not apply to Title VII, stating the phrase "every civil action" in § 2401(a) meant its six-year limitations period applied, *id.* at 100, and that § 2401(a) was subject to equitable tolling, *id.* at 101.

Howard and Megginson appeal, and our review is *de novo*, *see Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014); *Doe v. Rumsfeld*, 683 F.3d 390, 393 (D.C. Cir. 2012).

**II.**

28 U.S.C. § 2401(a) provides:

> Except as provided by chapter 71 of title 41 [relating to claims arising out of government contracts], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

This provision originated in the Tucker Act, *see Saffron v. Dep't of the Navy*, 561 F.2d 938, 944 (D.C. Cir. 1977) (citing Act of Mar. 11, 1887, ch. 359, § 1, 24 Stat. 505, 505), which "was designed 'to give the people of the United States what every civilized nation of the world has already done — the right to go into the courts to seek [monetary] redress against the Government for their grievances,'" *United States v. Mitchell*, 463 U.S. 206, 213–14 (1983) (quoting 18 Cong. Rec. 2680 (1887) (statement of Rep. Bayne)). It "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). For claims not based on contract or seeking return of money paid to the United States, "the asserted entitlement to money damages depends upon whether any federal statute can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id*. at 400 (internal quotation marks omitted). Relevant here, until Title VII was extended to cover federal employees, judicial relief for discrimination in the federal workforce was "problematic," as "[d]amages for alleged discrimination were [arguably] . . . beyond the scope of the Tucker Act . . . since no express or implied contract was involved," *Brown*, 425 U.S. at 826 (citing *Gnotta v. United States*, 415 F.2d 1271, 1278 (8th Cir. 1969)). This court has acknowledged that the § 2401(a) limitations period applies beyond Tucker Act claims, *see Saffron*, 561 F.2d at 946, but it has not had occasion to consider whether it applies to Title VII.

The Department maintains that § 2401(a) applies by its express terms to "every civil action commenced against the United States." 28 U.S.C. § 2401(a). A Title VII suit is a "civil action," 42 U.S.C. § 2000e-16(c), and a suit against a federal official acting in an official capacity is a suit against the United States, *Mason v. Judges of the U.S. Courts of Appeals*, 952 F.2d 423, 425 (D.C. Cir. 1991). The Department points to this court's statement in *Spannaus*, 824 F.2d at 55, that "[t]he law of this circuit is clear: the words 'every civil action' mean what they say." It also relies on the "*inclusio unius est exclusio alterius*" canon of construction for the proposition that § 2401(a)'s inclusion of an express exception for Contract Disputes Act claims means other exceptions are "necessarily" excluded. Appellee's Br. 28.

Supreme Court precedent makes clear, however, that "every" cannot mean "every," as appellants point out in adopting the arguments presented by court-appointed Amicus.[1] In *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 277 (1983), the Supreme Court enforced the twelve-year statute of limitations in the Quiet Title Act, 28 U.S.C. § 2409a(g). If the word "every" in § 2401(a) were applied literally, then Congress's adoption of a twelve-year period would be impliedly repealed. Implied repeals are disfavored and not presumed unless the legislative intent is "clear and manifest," *Hui v. Castaneda*, 559 U.S. 799, 810 (2010) (internal quotation marks omitted), which it was not when Congress enacted the Quiet Title Act, *see Block*, 461 U.S. at 290. The Department does not suggest that § 2401(a) overrides Congress's intent that a longer period was appropriate in the Quiet Title Act. *See* Appellee's Br. 33 n.23. Furthermore, this court's statement in *Spannaus* upon which the Department

---

[1] The court expresses its appreciation of the assistance provided by Amicus.

relies is *dictum*, *cf. Martini v. Fed. Nat. Mortgage Ass'n*, 178 F.3d 1336, 1341 (D.C. Cir. 1999); the court held only that § 2401(a) applies to suits under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which does not include its own statute of limitations, *Spannaus*, 824 F.2d at 56. The court was not asked to address how § 2401(a) interacts with a targeted FOIA-specific statute of limitations, much less Title VII. *See id.* at 55–56.

Appellants contend, and the Department acknowledges, *see* Appellee's Br. 27, that plain text must give way where two statutes irreconcilably conflict. Statutes are to be considered irreconcilably conflicting where "there is a positive repugnancy between them" or "they cannot mutually coexist." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976). "'Repeal is to be implied only if necessary to make the (later enacted law) work, and even then only to the minimum extent necessary. This is the guiding principle to reconciliation of the two statutory schemes.'" *Id.* (quoting *Silver v. New York Stock Exchange*, 373 U.S. 341, 357 (1963)). As a corollary, "when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143–44 (2001) (internal quotation marks omitted). "The courts are not at liberty to pick and choose among congressional enactments," *Morton v. Mancari*, 417 U.S. 535, 551 (1974), and deeming two statutes to conflict is "a disfavored construction," *Halverson v. Slater*, 129 F.3d 180, 186 (D.C. Cir. 1997) (citing *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994)). Thus, upon concluding that "[i]t is not enough to show that the two statutes produce differing results when applied to the same factual situation," *Radzanower*, 426 U.S. at 155, the Supreme Court has "decline[d] to read . . . statutes as being in irreconcilable conflict without seeking to ascertain the actual intent of Congress," *Watt v. Alaska*, 451 U.S. 259, 265 (1981).

Appellants maintain that such a conflict exists here because applying § 2401(a) to Title VII would undermine Congress's goal of encouraging employees to resolve their employment discrimination disputes administratively. They point out that Congress has spoken to time limits: "Section 2000e-16(c) expressly provides the time periods under which a federal employee '*may* file a civil action,' for employment discrimination," and its time limits control as the "express[ion] [of] a clear intent by Congress to permit suits during the[se] time windows." Amicus Br. 19 (emphasis in original). Adhering to the congressional scheme is particularly important, they suggest, in view of the Supreme Court's conclusion that, in extending Title VII protection to federal employees, Congress intended it to be the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id*. at 20 (quoting *Brown*, 425 U.S. at 829) (internal quotation marks omitted).

Additionally, appellants contend that where there is a conflict, the more specific statute applies. *See id.* at 18–24. "[I]t is a commonplace of statutory construction that the specific governs the general," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992), and this is ordinarily true where two statutes irreconcilably conflict, *see Edmond v. United States*, 520 U.S. 651, 657 (1997); *accord Adirondack Med. Ctr.*, 740 F.3d at 698. Significantly for our purposes, "[t]hat is particularly true where . . . 'Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions.'" *RadLAX*, 132 S. Ct. at 2071 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). This is no less true with respect to statutes of limitations. *See Sisseton-Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation, N. Dakota & S. Dakota v. United States*, 895 F.2d 588, 594 (9th Cir. 1990) (citing *Block*, 461 U.S. at 292).

Upon examining Title VII's scheme, we conclude that there is an irreconcilable conflict such that the specific time limits, 42 U.S.C. § 2000e-16(c), trumps the general limitations period, 28 U.S.C. § 2401(a), and that the Department's contrary interpretation of the relationship between the two statutes is unpersuasive.

**A.**

In extending Title VII protections to federal employees, Congress established an administrative and judicial enforcement scheme that embodies policy considerations similar to those underlying Congress's 1964 enactment applicable to private employees. That is, Congress created "complementary administrative and judicial enforcement mechanisms," *Brown*, 425 U.S. at 831, while still emphasizing its preference for administrative resolution of disputes, *see id.* at 833–34. The Civil Service Commission (and the EEOC as of 1979) was given authority to enforce the non-discrimination provisions "'through appropriate remedies, including reinstatement or hiring of employees with or without back pay,' to issue 'rules, regulations, orders, and instructions as it deems necessary and appropriate' to carry out its responsibilities under the Act, and to review equal employment opportunity plans that are annually submitted to it by each agency and department." *Id.* at 832 (quoting 42 U.S.C. § 2000e-16(b)). Although allowing an aggrieved employee to file a civil action, Congress imposed "certain preconditions": seek relief from the employing agency that allegedly discriminated and then either seek appellate review by the EEOC and file suit within ninety days after its final action, or file suit within ninety days after receiving a final agency decision without appealing to the EEOC. *Id.* (citing 42 U.S.C. § 2000e-16(c)). In recognition of lengthy administrative delays, Congress allowed an employee to "escape from the administrative quagmire," *Martini*, 178 F.3d at 1345, by "fil[ing] a civil action if, after 180 days from the filing of the initial charge or appeal, the [employing] agency or the

[EEOC] has not taken final action." *Brown*, 425 U.S. at 832 (citing 42 U.S.C. § 2000e-16(c)).

The Supreme Court acknowledged in *Brown* "[t]he balance, completeness, and structural integrity of § [2000e-16]." *Id.* It recognized as well "[t]he crucial administrative role that each [employing] agency together with the [EEOC] was given by Congress in the eradication of employment discrimination." *Id.* at 833. The Court concluded that Congress's "rigorous administrative exhaustion requirements and time limitations[] would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible." *Id.* But because Congress had not explicitly "position[ed]" federal-sector Title VII provisions "in the constellation of antidiscrimination law," Congress's intent had to be "infer[red] . . . in less obvious ways." *Id.* at 825. Reviewing the case law and the Senate and House Committee Reports, the Court noted that "before passage of the 1972 Act, the effective availability of either administrative or judicial review was far from sure." *Id.* Finding that to be an "unambiguous congressional perception," the Court was satisfied that this "seems to indicate that the congressional intent in 1972 was to create an exclusive, pre-emptive administration and judicial scheme for the redress of federal employment discrimination." *Id*. at 828–29. Indeed, the Court concluded that "the structure of the 1972 amendment itself fully confirms the conclusion that Congress intended it to be exclusive and pre-emptive." *Id.* at 829. "In a variety of contexts," the Court noted, it had "held that a precisely drawn, detailed statute pre-empts more general remedies," especially where to do otherwise would undercut the "'strong policy requiring exhaustion of . . . remedies.'" *Id.* at 834 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973)).

Applying this approach leads to the conclusion that the time limits for filing suit in 28 U.S.C. § 2401(a) and 42 U.S.C.

§ 2000e-16(c) irreconcilably conflict. Congress chose to address employment discrimination in a manner that emphasized using the employing agency and the EEOC to resolve complaints free of judicial involvement and vested broad remedial authority in them. The administrative process was to precede resort to court, but not to replace it. Although federal employees were not required to pursue administrative remedies for more than 180 days, Congress's structure manifested its preference that federal employees first attempt administrative resolution of their complaints and the broad remedial powers Congress included in the administrative context made it attractive to pursue that path. *See generally West v. Gibson*, 527 U.S. 212, 218–19 (1999). Thereafter, Congress established time limits in which an aggrieved employee "may file a civil action": after 180 days have elapsed following the filing an initial charge or within ninety days of receipt of notice of final administrative action. Contrary to the fixed six-year limit of § 2401(a), Congress did not establish a time limit after which judicial relief would cease to be available due to the passage of time while employees pursued administrative remedies, again underscoring Congress's preferred manner of resolving federal employment discrimination complaints.

With Congress's determination of the appropriate time limits in which a federal employee "may file a civil action," it would be, given the context, structure and purpose of Title VII, fundamentally inconsistent with the statutory scheme to impose an artificial six-year time limit. Congress understood that lengthy delays were part of the administrative process and gave employees the option to proceed to court after 180 days. *See Martini*, 178 F.3d at 1345. But for employees who wished to remain on the administrative path, Congress set no outer time limit, choosing instead to provide a ninety-day window following final agency action in which they could file suit. Setting an outer time limit would reorder the incentives that encourage administrative resolution by requiring federal employees, where

the administrative process reaches six-and-a-half years, to elect either to continue to pursue administrative relief or to abandon the administrative process without result in order to file a timely civil action. Contrary though it would be to the congressional scheme, that would be the effect of adopting the Department's position. The instant case and a sampling of others[2] demonstrate these delays can occur, even when, as here, the employees are diligent. Succinctly put, Congress's goal of resolving employment discrimination disputes through the administrative processes "is better met by enacting a limitations period for filing a court action that runs from the . . . end of the administrative process," *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 474 (3d Cir. 2001), rather than from the start or the middle of it.

The conclusion that the two statutory time limits irreconcilably conflict is bolstered by decisions of the Supreme Court discussing the preemption of general remedies by "precisely drawn, detailed statute[s]." *Brown*, 425 U.S. at 834 (collecting cases). In those cases, involving for example the Federal Tort Claims Act, the Supreme Court noted it "ha[s] consistently held that a narrowly tailored employee compensation scheme pre-empts the more general tort recovery statutes." *Id.* at 834–35. Significantly, in another example, the Court noted it had held that where a more general federal statute could "undermine the 'strong policy'" animating a comprehensive remedial scheme,

---

[2] *See, e.g.*, *Massingill v. Nicholson*, 496 F.3d 382, 383–84 (5th Cir. 2007) (1994 until 2005); *Laber v. Harvey*, 438 F.3d 404, 411–12 (4th Cir. 2006) (1990 or so until 2003); *Pueschel v. United States*, 369 F.3d 345, 351 (4th Cir. 2004) (1992 to 2001); *Wilson v. Pena*, 79 F.3d 154, 157–58 (D.C. Cir. 1996) (1984 to 1990); *Kannikal v. Holder*, No. CIV.A. 3:12-220, 2014 WL 917342, at *1 (W.D. Pa. Mar. 10, 2014) (2001 to 2012), *appeal pending*, No. 14-1803 (3d Cir.); *Dews-Miller v. Clinton*, 707 F. Supp. 2d 28, 36–37 (D.D.C. 2010) (1996 to 2006), *aff'd*, 433 F. App'x 5 (D.C. Cir. 2011).

the latter preempted the former, *id.* at 834 (quoting *Preiser*, 411 U.S. at 488–90).  Although the Court was examining how two federal statutory *schemes* interacted, and § 2401(a)'s six-year statute of limitations is not part of such a "scheme," the Court's discussion of patent venue provisions in *Brown*, 425 U.S. at 835 (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957); *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942)), suggests *Brown* need not be read narrowly.  In *Fourco*, the Court concluded that the relevant question was not whether either venue statute was clear on its face — both were — but "rather . . . whether [the general venue statute] supplements [the patent-specific venue statute], or, in other words, whether the latter is complete, independent and alone controlling in its sphere." *Fourco*, 353 U.S. at 228.  Concluding that it was, the Court stated "[s]pecific terms prevail over the general in the same or another statute which otherwise might be controlling." *Id.* at 228–29 (internal quotation marks omitted).  So too here.

The conclusion that the time limits irreconcilably conflict finds support as well in another line of precedent from the Supreme Court and our sister circuits.  Although not addressing the interplay between § 2401(a) and § 2000e-16(c), a number of courts have recognized that truncating the administrative process or applying an outside time limit would frustrate Congress's objectives in enacting Title VII.  These courts have declined to "consign [Title VII] lawsuits to the vagaries of diverse state limitations statutes." *Occidental Life Ins. Co. of Calif. v. EEOC*, 432 U.S. 355, 370–71 (1977).  For instance, in *Occidental*, the Supreme Court held that the EEOC need not comply with state statutes of limitations when filing suit in its own name. *See id.* at 373.  Although "[w]hen Congress has created a cause of action and has not specified the period of time within which it may be asserted, the Court has frequently inferred that Congress intended that a local time limitation should apply," the Court pointed out that rule is not to be applied inflexibly, because "[s]tate

legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Id.* at 367. The Court concluded that "[i]n view of the federal policy requiring employment discrimination claims to be investigated by the EEOC and, whenever possible, administratively resolved before suit is brought in a federal court, it is hardly appropriate to rely on the 'State's wisdom in setting a limit.'" *Id.* at 368 (quoting *Johnson*, 421 U.S. at 464). The state statute of limitations in question and Title VII "could under some circumstances directly conflict," *id.* at 368–69, but even where they did not "absorption of state limitations would be inconsistent with the congressional intent underlying the enactment of the 1972 amendments," *id.* at 369, to "substantially increase[]" EEOC involvement in dispute resolution, *id.* at 370.

Circuit courts of appeal have held that Title VII suits filed by private-sector employees, like those filed by the EEOC, are not subject to state statutes of limitations. *See Burgh*, 251 F.3d at 474; *Kirk v. Rockwell Int'l Corp.*, 578 F.2d 814, 819 (9th Cir. 1978); *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 522 (6th Cir. 1975). Pointedly, in *Burgh*, the Third Circuit explained that "Title VII is not a statute without a limitations period," and thus there was "no need to import a state limitations period as a gap-filler." 251 F.3d at 472. There, "the two-year limitations period urged by the Borough [of Montrose] would conflict with the timetables established in Title VII," *id.*, because "the limitations scheme provided for in Title VII is consistent with Congress's intent that most complaints be resolved through the EEOC rather than by private lawsuits," *id.* at 473. Nearly identical reasoning appears in *EEOC v. W.H. Braum, Inc.*, 347 F.3d 1192 (10th Cir. 2003), holding that the Age Discrimination in Employment Act imports Title VII's enforcement framework, *id.* at 1195–96, which precludes application of a two-year state

statute of limitations with respect to EEOC suits, as the Court held in *Occidental*, and as to suits by private individuals, *id*. at 1197–2000. The Tenth Circuit observed that "[i]mportation of a state statute of limitations would result in direct conflict with the federally established timetable, cause confusion to individual plaintiffs, cut off the conciliation process, and force additional individual cases into court." *Id.* at 1198 (citations omitted).

Circuit courts have demonstrated a similar degree of solicitude for congressional intent in declining to apply the doctrine of laches to bar civil actions delayed by EEOC processes. In *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1256 (5th Cir. 1979), *aff'd in relevant part and reversed on other grounds on reh'g*, 619 F.2d 459 (5th Cir. 1980), *aff'd*, 452 U.S. 89 (1981), nine years had elapsed between the employees' filing of administrative charges and filing a civil action. The Fifth Circuit concluded that "[a] plaintiff cannot be penalized for choosing to forgo" judicial enforcement and opting for "the legislatively and judicially favored method of relying on the administrative processes of the EEOC." *Id*. at 1257. The Fourth and Eleventh Circuits relied on *Bernard* to reach the same conclusion. *See Holsey v. Armour & Co.*, 743 F.2d 199, 211 (4th Cir. 1984); *Howard v. Roadway Exp., Inc.*, 726 F.2d 1529, 1532–34 (11th Cir. 1984). The Third Circuit cited *Bernard* approvingly in concluding that "although plaintiffs have some obligation to monitor the progress of their charge and do not have the absolute right to await termination of EEOC proceedings where it would appear to a reasonable person that no administrative resolution will be forthcoming, whether the circumstances warranted the delay in a particular case requires an ad hoc determination" and remanded the case. *Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 77 (3d Cir. 1986). *See also Rozen v. D.C.*, 702 F.2d 1202, 1203–04 (D.C. Cir. 1983).

The instant case differs from these cases because it involves two federal statutes, rather than federal and state statutes or an

equitable defense like laches. But that does not render these cases "uninstructive." Appellee's Br. 33. Their reasoning confirms that "in enacting Title VII, Congress chose not to truncate the administrative process but rather to encourage claimants to pursue administrative proceedings to their end," Amicus Br. 28. The Tenth Circuit's observations in *Braum* regarding conflicting time limits are no less applicable here. That is, the conflict between § 2401(a) and § 2000e-16(c) operates similarly to that which courts refused to sanction in *Occidental*, *Burgh*, and *Braum*. In some instances, § 2000e-16(c) would require aggrieved employees to file a civil action before § 2401(a)'s six-year limitations period has expired, because there has been a final administrative determination; in others, as here, § 2401(a) would require the employees to file a civil action before expiration of the ninety-day period in § 2000e-16(c). Where, as in appellants' case, no final administration action has issued six years after their claims accrued, the aggrieved employee "w[ould] be forced to decide whether to file suit without knowing" the outcome of agency review or lose the opportunity to do so. *Braum*, 347 F.3d at 1198. As in *Kirk*, 578 F.2d at 819, "[i]t would be inconsistent with Title VII to hold that an aggrieved party who pursued his claim . . . diligently . . . loses his right to file an action because, unknown to him, [another] statute of limitations had run."

Congress's decision to craft a "careful blend of administrative and judicial enforcement powers," *Brown*, 425 U.S. at 833, then, would be thwarted in practice as significantly by application of § 2401(a) as it would by importation of state statutes of limitations or a laches defense based on administrative delay. Likewise, applying § 2401(a) would irreconcilably conflict with Congress's intent that federal employees not be at a disadvantage relative to private-sector Title VII employees in pursuing administrative remedies, *see* S. REP. No. 92-415, at 16 (1971); *see also Chandler v. Roudebush*, 425 U.S. 840, 841 (1976), which would happen if the administrative process for federal employees arbitrarily

terminated at six-and-a-half years while private employees could continue to pursue administrative relief without jeopardizing their opportunity to file a timely civil action, *cf., e.g.*, *Bernard*, 596 F.2d at 1253. Applying § 2401(a)'s limitation period to Title VII claims also runs counter to the understanding that "Title VII 'is remedial legislation dependent for its enforcement on laymen,' and that 'resort to technicalities to foreclose recourse to administrative or judicial processes is particularly inappropriate.'" *Rozen*, 702 F.2d at 1203–04 (quoting *Bethel v. Jefferson*, 589 F.2d 631, 642 (D.C. Cir. 1978)); *accord Kirk*, 578 F.2d at 819.

**B.**

The Department takes a different view of how Title VII and § 2401(a) interact. As the Department sees it, the federal employee "has virtually unfettered discretion to choose the forum for her dispute." Appellee's Br. 37. She may litigate within the administrative process or escape it altogether after 180 days, "even on the eve of or during the administrative hearing and after discovery, motions practice, etc." *Id.* But that unilateral authority to determine the nature of the process does not last forever, according to the Department. Rather, by not expressly exempting Title VII from the reach of § 2401(a), Congress was alerting aggrieved employees that once they had pursued the administrative process for six-and-a-half years, they "ha[d] effectively chosen the administrative tribunal . . . to be [their] exclusive forum." *Id.* at 38. An employee can still seek redress of her grievance in the administrative realm, but she "loses the unfettered right to re-litigate her claim in, and seek *de novo* judicial review from, a district court." *Id.* at 38–39. The Department characterizes this as an "elegant scheme," *id.* at 39, that balances the congressional concern for finality expressed in establishing statutes of limitations, *see id.* at 36, against the national interest "in eradicating discrimination in the federal workforce," *id*. at 37.

Even assuming the Department's interpretation of how the two statutory time limits interact is not internally illogical, it is not the scheme adopted by Congress. As the Supreme Court recognized in *Occidental*, the 1972 amendments to Title VII embodied "the federal policy requiring employment discrimination claims to be investigated by the EEOC and, *whenever possible*, administratively resolved before suit is brought in a federal court." 432 U.S. at 368 (emphasis added). Title VII includes the timing rules that Congress determined were appropriate for the problem it was addressing. The Department responds, in observing that the ninety-day period is not jurisdictional, *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990), that § 2401(a) provides what Title VII lacks, namely a "*jurisdictional* outer-limit on maintaining claims in court against the federal government," Appellee's Br. 30 (emphasis added), and a "filing deadline for cases where no [final agency decision] is issued," *id.* at 31. Regardless of whether § 2401(a) is jurisdictional, a question this court need not decide, the Department's interpretation of the relationship between § 2401(a) and § 2000e-16(c) ignores that Title VII has no "jurisdictional outer-limit" because Congress chose not to impose one given its "'hope[] that recourse to the private lawsuit w[ould] be the exception and not the rule,'" *Martini*, 178 F.3d at 1346 (quoting 118 Cong. Rec. 7168), and its knowledge that there would be long administrative delays, *see id.* at 1345 (citing S. REP. No. 92-415, at 23; H.R. REP. No. 92-238 (1971)). Congress tied the timing of any lawsuit to the progress of administrative resolution rather than to the amount of time that had elapsed in the administrative process since the employee filed an initial charge. *Cf. Burgh*, 251 F.3d at 474. There is nothing strange, or inelegant, about Congress authorizing relief that is not tied to a jurisdictional statute of limitations: private-sector Title VII plaintiffs do not face a jurisdictional limitations period for filing a civil action, *see Irwin*, 498 U.S. at 95, and the limitations periods in AEDPA, *see Day v. McDonough*, 547 U.S. 198, 205, 209

(2006), and the Clayton Act, *see Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040 (D.C. Cir. 1986), for example, are also non-jurisdictional. Appellants note that in various statutory settings "pegging statutes of limitations to final agency action is commonplace." Reply Br. 10 (citing the Clean Air Act, 42 U.S.C. § 7607(b)).

Unsurprisingly, the tax refund cases on which the Department relies to demonstrate that "the *jurisdictional* limit of Section 2401(a) presents no conflict with the *non-jurisdictional* filing deadlines applicable to federal sector Title VII," Appellee's Br. 30, cannot bear the weight placed upon them. In *United States v. A. S. Kreider Co.*, 313 U.S. 443 (1941), the Supreme Court held that the six-year statute of limitations (a precursor to § 2401(a)) did not displace a *shorter* statute of limitations for tax recovery suits, where a "less liberal[]" limitations period recognized that such suits "impeded effective administration of the revenue laws," *id.* at 447. The general statute of limitations was not "applied to truncate a cause-of-action-specific limitations period." Reply Br. 5. Moreover, the policy justification referred to in *Kreider* ill fits Title VII's time limits, which allow suit by the employee aggrieved by administrative failure to take final action. The Department also cites three district court cases, two of which have interpreted *Kreider* to mean that § 2401(a) cuts off tax refund suits even when the specific statutory time has not run, *see Breland v. United States*, No. 5:10-CV-0007 GTS/GHL, 2011 WL 4345300, at *6–7 (N.D.N.Y. Sept. 15, 2011); *Finklestein v. United States*, 943 F. Supp. 425, 431–32 (D. N.J. 1996). *Kreider*, however, held only that the shorter, specific statute of limitations overrides the general six-year limitations period (now § 2401(a)). 313 U.S. at 447–48. It did not consider the interaction of that "entirely consistent" limitations period with a longer, statute-specific limitations period. *Id*. at 447. Neither did *Goss v. United States*, 293 F. Supp. 2d 816, 817–18 (N.D. Ohio 2003).

The Department insists that there is no conflict between the time limits in § 2401(a) and § 2000e-16(c) where "no [final administrative decision] was issued" to trigger Title VII's ninety-day period to file a civil action. Appellee's Br. 31–32. Not so. If in the midst of a protracted administrative proceeding, an employee is aggrieved by administrative inaction more than six years and 180 days after filing the initial charge, § 2000e-16(c) would allow her to file a civil action, but § 2401(a) would bar it. The Department cites no Title VII text or legislative history, or judicial precedent regarding Title VII, indicating that Congress intended employees who are aggrieved by agency inaction less than six-and-a-half years after filing their initial charges to be treated differently from those who are not aggrieved until six-and-a-half years have passed.

Similarly, with respect to the Department's invocation of Congress's concern about finality, the Department has pointed to nothing in Title VII or its legislative history indicating Congress intended to preclude civil suits whenever the administrative process lasted more than six-and-a-half years. "The absence of inflexible time limitations on the bringing of lawsuits will not . . . deprive defendants in Title VII civil actions of fundamental fairness or subject them to the surprise and prejudice that can result from the prosecution of stale claims." *Occidental*, 432 U.S. at 372. For "[u]nlike the litigant in a private action who may first learn of the cause against him upon service of the complaint, the Title VII defendant is alerted to the possibility of an enforcement suit," *id.*, when an employee files a formal complaint with her department. Under EEOC regulations that must occur shortly after the alleged discrimination: employees must consult their employing agency's Equal Employment Opportunity Counselor "within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1); counseling must generally conclude within thirty days, *id.* § 1614.105(d); and an aggrieved employee must file a complaint with the employing

agency within fifteen days of receipt of the notice at the end of an unsuccessful counseling period, *id.* § 1614.106(b). Consequently, the fact that a civil action may not be filed until years after alleged discrimination does not create the type of surprise or prejudice that statutes of limitation are designed prevent, *see Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944).

The Department's attempt to draw a distinction between requirements for *filing* a civil action under § 2000e-16(c), and for "*maintaining* a civil action," Appellee's Br. 34, is a non-starter. Observing that "Title VII's civil action provision does not contain language excluding of other legal requirements," such as the phrase "notwithstanding any other provision of law," the Department notes that "other general litigation rules" apply to Title VII, such as the limitation on appeals, 28 U.S.C. § 1291; rules for transferring claims, see *id.* § 1404(a); pleading standards, *see* FED. R. CIV. P. 8(a); and Title VII's provision regarding exhaustion. Appellee's Br. 34. None of these provisions conflict with the Title VII statutory scheme, however, and the absence of ordering language according Title VII's provisions priority over other provisions of the United States Code is not dispositive when, as here, the two statutes irreconcilably conflict. Moreover, the Supreme Court has concluded that Congress intended Title VII to be preemptive for federal employee discrimination complaints. *See Brown*, 425 U.S. at 829.

Congress, of course, could have balanced the interests differently in amending Title VII to apply to federal employees and concluded that six years after the initial 180-day period is sufficient time for the EEOC and the employing agency to resolve or dismiss the employee's discrimination complaint. But it did not, for various reasons discussed in *Brown* and *Martini*, 178 F.3d at 1345 (citing S. REP. No. 92-415, at 23; H.R. REP. No. 92-238), including long administrative delays, the complexity often

involved in redressing problems of employment discrimination, and the utility of agency expertise in working to resolve complaints, *see* S. REP. NO. 92-415, at 18–19. Congress also could have required federal employees to make an irrevocable election early in the administrative process, much as it required of employees subject to negotiated grievance procedures, *see* 5 U.S.C. § 7121(d); *Guerra v. Cuomo*, 176 F.3d 547, 549 (D.C. Cir. 1999). But it did not — for reasons the Supreme Court identified in *Brown* and that appellants persuasively suggest could have the perverse effect of "creat[ing] strong incentives to abandon the administrative process," Reply Br. 15, contrary to Congress's preference that federal employees take advantage of that forum. So understood, inasmuch as "[t]he judicial role is to enforce th[e] congressionally determined balance," *Milner*, 131 S. Ct. at 1265 n.5, we conclude that 28 U.S.C.§ 2401(a) and 42 U.S.C. § 2000e-16(c) irreconcilably conflict and that only the time limits in Title VII apply to appellants' civil action.

Appellants' case illustrates why that outcome reflects Congress's intent. They were neither dilatory in the administrative process nor in filing their civil action, and the Department does not suggest otherwise. Howard's claim first accrued in August 1995, 180 days after she filed her initial charge. Under § 2401(a), she would have been required to file suit in August 2001 or be forever barred from doing so. Yet at that juncture, the EEOC's Office of Federal Operations had ruled that the Washington Field Office's ALJ had erred in disqualifying Howard as class agent, provisionally certified a class, and remanded the matter for further administrative proceedings. As the Department sees it, notwithstanding the time allowed in § 2000e-16(c), Howard should have either ignored that she had just received a favorable ruling in the administrative process and instead sought judicial relief, or abandoned any hope of ever doing so in the event the administrative process took a turn for the worse. That result is irreconcilable with Congress's express time limits for its statutory

scheme, with its structural and remedial emphasis on administrative resolution for redressing discrimination in federal employment. Megginson's claim, which accrued around the same time as Howard's, similarly demonstrates that application of § 2401(a) would irrevocably conflict with congressional intent.

## III.

Because the district court erred in applying § 2401(a)'s six-year statute of limitations to appellants' Title VII claims, we will remand the case to the district court for consideration of the second amended complaint. Although appellants also contend that the district court abused its discretion in denying their motion for leave to file a third amended complaint, *see Elkins v. D.C.*, 690 F.3d 554, 565 (D.C. Cir. 2012), we are unpersuaded. The district court denied leave to add six new counts that it concluded were "entirely distinct from the operative complaint's single count" and "would radically alter the scope and nature of this case." *Howard*, 891 F. Supp. 2d at 101 (internal quotation marks omitted). Appellants "offered no reason for failing to assert these claims earlier in this action," *id.*, although they had known the facts and had filed other civil actions against the Department based on many of the same allegations they sought to add. *Id.* at 101–02. The district court also noted as to all of Megginson's new claims and some of Howard's that, in view of its ruling that § 2401(a) applied, "yet another reason" to deny leave was that amendment would be futile, *id.* at 102. The district court's other reasons suffice to show there was no abuse of discretion in denying leave to file. *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247–48 (D.C. Cir. 1987).

Accordingly, we reverse the dismissal of the second amended complaint and remand the case to the district court.