**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 14 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GHOLAMREZA NAGAHI,

      Plaintiff - Appellant,

vs.

IMMIGRATION &
NATURALIZATION SERVICE,
District Director; MERYL E.
ROGERS, Officer in Charge,
Immigration and Naturalization
Service,

      Defendants - Appellees.

No. 98-4191

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CV-1006)

---

Sandra P. Saltrese-Miller, Boulder, Colorado, for Plaintiff - Appellant.

Michelle R. Slack (and David W. Ogden, Acting Assistant Attorney General and
Richard M. Evans, Assistant Director, with her on the briefs), U.S. Department of
Justice, Civil Division, Washington, D.C., for Defendants - Appellees.

---

Before **KELLY** and **PORFILIO**, Circuit Judges and **ALLEY**,[*] District Judge.

---

[*]Honorable Wayne E. Alley, Senior District Judge, United States District
Court of the Western District of Oklahoma, sitting by designation.

**KELLY**, Circuit Judge.

This case requires us to determine whether an administrative agency can create a limitations period affecting the ability of an Article III court to review agency action, absent an express delegation of congressional authority. We hold that it cannot, reverse, and remand the case for further proceedings on the merits.

### Background

Mr. Gholamreza Nagahi, a non-citizen resident, was arrested on April 29, 1985 in Salt Lake County, Utah, based on a five count indictment. Plaintiff pled guilty to a lesser crime, a class B misdemeanor. He was sentenced to six months imprisonment, but the sentence was suspended and plaintiff was placed on probation. After probation was completed, the Utah district court entered an order on March 10, 1987, vacating Mr. Nagahi's plea and dismissing the matter "in the interest of justice." R. doc. 19, at 7. The court subsequently entered three orders expunging all the related charges and convictions against plaintiff. Id. at 8-10 (Expungement Orders, November 23, 1987).

On August 3, 1994, Mr. Nagahi applied to the Immigration and Naturalization Service ("INS") to become a naturalized citizen of the United States. The INS has authority to naturalize an alien who has lawfully resided

within the United States for at least five years, meets certain physical presence requirements, and "during all the periods referred to in this subsection has been and still is a person of good moral character." 8 U.S.C. § 1427(a)(3). In determining whether an applicant has good moral character, the INS is not limited to conduct which occurred during the required five year residency period, "but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." 8 U.S.C. § 1427(e). A finding of good moral character is conclusively prohibited for any person "who has given false testimony for the purpose of obtaining" citizenship benefits. 8 U.S.C. § 1101(f)(6).

The Application for Naturalization form (N-400) which Mr. Nagahi filled out asked several questions relating to character. In particular, Question 15(b) asked: "Have you ever . . . been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations?" Before answering this question, Mr. Nagahi consulted various state officials to ask them how to respond to this question, given the expungement of his criminal record. In response to this questioning, Mr. Walter Ellett, the Chief Deputy District Attorney for Salt Lake County directed plaintiff

to Utah Code Ann. §§ 77-18-10(6) and 77-18-13(3). [1] Relying upon the advice of the state officials and the state statutes, plaintiff answered Question 15(b) "No."

On November 9, 1994, Mr. Nagahi was examined by INS examiner Ralph Hunt, pursuant to the requirements of 8 U.S.C. § 1446(a). Mr. Hunt repeatedly referred to Question 15(b) and asked about plaintiff's criminal record. Mr. Nagahi replied in the negative the first two times this question was asked, but explained the expungement and his conversation with the state officials when asked a third time. Plaintiff was subsequently sent a "Notice of Intent to Deny" letter, to which he timely responded. On January 17, 1995, the INS denied Mr. Nagahi's application based on two grounds: (a) under § 1427(e), plaintiff committed a crime "contrary to moral and ethical standards of this community;" and (b) under § 1101(f)(6), plaintiff gave false testimony both on his application and during the interview regarding his criminal record. R. doc. 19, at 18-21.

Mr. Nagahi sought and received a further hearing before the INS on his application. At an April 21, 1995 hearing, INS examiner Allen Spiers affirmed the previous denial of naturalization. Examiner Spiers informed plaintiff that he

---

[1] § 77-18-10(6) was renumbered as 77-18-10(7) by 1996 amendment. That section states: "A person who has received expungement of an arrest under this section may respond to any inquiry as though the arrest did not occur, unless provided otherwise by law."

§ 77-18-13(3) reads: "Except as otherwise provided by law, a person receiving expungement of a conviction under this section may respond to any inquiry as though the conviction did not occur."

had 120 days within which to appeal this final decision to the United States District Court.  Mr. Nagahi retained counsel to help him with his application appeal and informed her of the 120 day deadline.  Counsel, however, decided to pursue the appeal internally with the INS rather than taking the action to federal court.  All of these attempts proved futile, and culminated in a September 12, 1995 letter from the INS reiterating its denial of naturalization and denying plaintiff's request to reopen the proceedings.  Counsel withdrew and Mr. Nagahi filed a petition for review of the INS decision with the district court on November 7, 1995.  That court dismissed the petition as untimely and this appeal followed.

## Analysis

As part of the Immigration and Naturalization Act (INA), Congress specifically granted jurisdictional authority to the federal district courts to review the denial of an application for naturalization.  INA § 310(c), codified at 8 U.S.C. § 1421(c).  That section states:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5 [the Administrative Procedures Act].  Such review shall be de novo, and the court shall make its own findings of

fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). This grant of authority is unusual in its scope – rarely does a district court review an agency decision de novo and make its own findings of fact.

Title 8 of the U.S. Code does not specify a time within which such review must be sought. On October 7, 1991, the INS promulgated 8 C.F.R. § 336.9(b). See 56 Fed. Reg. 50,475, 50,499 (1991). That regulation provides in relevant part:

> (b) Filing a petition . Under [the procedures of part 310 of this chapter] an applicant shall file a petition for review in the United States District Court having jurisdiction over his or her place of residence, in accordance with chapter 7 of title 5, United States Code, within a period of not more than 120 days after the Service's final determination. . . .

8 C.F.R. § 336.9(b). The district court applied this regulation in finding that Mr. Nagahi was time barred and further determined that equitable tolling was not proper because he knew of the deadline but simply failed to comply with it.

On appeal, Mr. Nagahi argues that the 120 day time limit should not be enforced because the INS was without authority to pass such a limit on judicial review. He characterizes § 336.9(b) as jurisdictional and points to Castenada v.

- 6 -

INS, 23 F.3d 1576, 1580 n.2 (10th Cir. 1994) in which we stated that only Congress can limit the jurisdiction of the federal district courts. The INS agrees that "if the time limit is jurisdictional, it is impermissible." Aplee. Supp. Br. at 3. However, the agency asserts that § 336.9(b) is simply a "codified, fixed period laches policy" which should be treated like a statute of limitations, i.e., subject to waiver and equitable tolling. Id. at 4. [2]

Despite the parties' contentions to the contrary, the ultimate characterization of § 336.9(b) as either jurisdictional or a statute of limitations is not determinative in this case. The INS urges us to view its regulation with substantial deference under the doctrine announced under Chevron, U.S.A. v. Natural Resources Defense, 467 U.S. 837 (1984). However, it is axiomatic that an agency cannot create regulations which are beyond the scope of its delegated authority. "A precondition to deference under Chevron is a congressional delegation of administrative authority." Adams Fruit Co. v. Barrett, 494 U.S. 638, 649 (1990). Legislative authority can be delegated to an executive department "so long as Congress provides [the] administrative agency with standards guiding its actions such that a court could ascertain whether the will of

---

[2]The INS, while at all times asserting that § 336.9(b) is not jurisdictional, has varied in its characterization of that time limit. Section 336.9(b) has been variously referred to as a statute of limitations, a "laches policy," and at oral argument, simply as a time for appellate filing.

Congress has been obeyed." Skinner v. Mid-America Pipeline Co., 490 U.S. 212, 218 (1989) (citation and internal quotations omitted). Failure to specify definite standards for agency action results in a violation of the constitutional principle of separation of powers. See id.

The INS points to three sections of the INA as congressionally delegated authority for the promulgation of § 336.9(b). The first is 8 U.S.C. § 1421(a) which states: "The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." This provision says nothing about limiting judicial review of agency decisions and must be read in conjunction with the de novo review by the federal district courts provided in 8 U.S.C. § 1421(c). See generally Traynor v. Turnage, 485 U.S. 532, 542 (1988) (discussing the "'strong presumption that Congress intends judicial review of administrative action'" (citation omitted)).

Second, 8 U.S.C. § 1103(a)(3) grants to the Attorney General the power to "establish such regulations . . . and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." The obvious scope of this grant is limited to acts which allow the Attorney General to carry out her authority. A limitation upon judicial review of the Attorney General's acts simply does not fit within this delegation.

The INS' third proffered source of authority, 8 U.S.C. § 1443(a), is

similar.

> The Attorney General shall make such rules and regulations as may be necessary to carry into effect the provisions of this part and is authorized to prescribe the scope and nature of the examination of applicants for naturalization as to their admissibility to citizenship.

While this delegation is a broad grant of authority, it does not extend to creating limits upon judicial review. Two factors support this conclusion. First, the INS admitted during oral argument that it was unaware of any regulation similar to § 336.9(b). Our review of the Code of Federal Regulations confirms that § 336.9(b) is the only administrative regulation which attempts to limit the time for judicial review, absent an express statutory provision. Such an administratively created limit subjecting a petitioner to procedural default is not favored in light of § 1451(c)'s broad grant of de novo review. "[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate [limits on judicial review] unless that power is conveyed by Congress in express terms." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) (stating this principle for retroactive rules which are also not favored in the law).

Second, we are persuaded that the Supreme Court's opinion in Adams Fruit Co., Inc. v. Barrett, 494 U.S. 638 (1990) requires our resolution in this case. Adams Fruit involved a challenge to administrative regulations promulgated

under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. § 1801 et seq. Section 504 of the AWPA provided a private right of action to migrant farm workers who were injured because of failure to comply with the AWPA's motor vehicle safety provisions. By statute, Congress provided the Secretary of the Department of Labor with regulatory authority to "prescribe the standards required for the purposes of implementing this section." 29 U.S.C. § 1841(d). Based upon this grant, the Secretary promulgated a regulation which limited the federal right of action to cases in which state workers' compensation laws did not apply to cover migrant workers. Adams Fruit, 494 U.S. at 649 (citing 29 C.F.R. § 500.122(b) (1989)).

The Supreme Court found that this regulation was not due any deference because it fell outside of the delegated authority granted by Congress.

> Congress clearly envisioned, indeed expressly mandated, a role for the Department of Labor in administering the statute by requiring the Secretary to promulgate standards implementing the AWPA's motor vehicle provisions. § 1841(d). This delegation, however, does not empower the Secretary to regulate the scope of the judicial power vested by the statute. Although agency determinations within the scope of delegated authority are entitled to deference, it is fundamental "that an agency may not bootstrap itself into an area in which it has no jurisdiction."

Id. at 650 (emphasis added and citation omitted).

That is exactly the situation in the present case. Nowhere in its delegation

to the INS did Congress grant the power "to regulate the scope of the judicial power vested by the statute." Yet this is exactly the effect of § 336.9(b). Whether it is called jurisdictional, a statute of limitations, a laches period, or a time in which to appeal, its fundamental purpose is to limit the ability of the federal district courts to review denials of naturalization. As such, it is beyond the authority delegated to the INS and will not be applied. [3]

In the absence of a specific statutory limitations period, a civil action against the United States under the APA is subject to the six year limitations period found in 28 U.S.C. § 2401(a). See Chemical Weapons Working Group, Inc. v. U.S. Dep't of the Army, 111 F.3d 1485, 1494-95 (10th Cir. 1997); see also Sierra Club v. Penfold, 857 F.2d 1307, 1315 (9th Cir. 1988); Smith v. Marsh, 787 F.2d 510, 512 (10th Cir. 1986). Mr. Nagahi's petition was filed in the district court less than half a year after the INS' final denial of his application for naturalization. Therefore, it was timely and the district court erred in finding it time barred under 8 C.F.R. § 336.9(b).

---

[3]The reliance of the INS on District Lodge 64 v. NLRB, 949 F.2d 441 (D.C. Cir. 1991) is inapposite in this case. In District Lodge, the D.C. Circuit upheld a decision of the NLRB to create a six month fixed period of limitations on the reinstatement of dismissed charges. However, this six month period only affected the ability of a person to pursue administrative, rather than judicial, remedies. See id. at 444-45; see also United Mine Workers v. Kleppe, 561 F.2d 1258, 1260-62 (7th Cir. 1977) (upholding agency's prescribed "time period for the filing of claims solely for use in its own administrative proceedings.").

REVERSED and REMANDED for further proceedings consistent with this opinion.