Joseph A. KANNIKAL, Petitioner,

v.

DEPARTMENT OF JUSTICE, Respondent.

No. 01–3020.

United States Court of Appeals, Federal Circuit.

Nov. 1, 2001.

Before MAYER, Chief Judge,
NEWMAN, and RADER, Circuit Judges.

RADER, Circuit Judge.

The Merit Systems Protection Board dismissed Dr. Joseph A. Kannikal's appeal for lack of jurisdiction. *Kannikal v. Dep't of Justice*, No. PH–0752–00–0005–I–1 (M.S.P.B. Jan.28, 2000). Dr. Kannikal had sought to appeal a decision of the Department of Justice, Federal Bureau of Prisons, Federal Correctional Institute (FCI), to remove him from his position as a physician's assistant, based on a violation of a settlement agreement. Because Dr. Kannikal waived his right to appeal to the Board in the settlement agreement, this court *affirms*.

## BACKGROUND

Dr. Kannikal began working as a physician's assistant for FCI in May 1988. He resigned in June 1990 to study for medical boards. He sought reinstatement at the FCI in the fall of 1992. Because his employment application did not rapidly lead to reemployment, Dr. Kannikal filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC). The EEOC determined that FCI discriminated against Dr. Kannikal on the basis of color and national origin (Indian) and ordered FCI to reinstate him. Thus, FCI reinstated Dr. Kannikal as a physician's assistant on January 20, 1998, retroactive to November 1992.

In June 1998, Dr. Daniel Leonard, FCI's Clinical Director, placed Dr. Kannikal on a Performance Improvement Plan. This plan gave Dr. Kannikal a certain amount of time to demonstrate an acceptable level of performance. Dr. Leonard later denied Dr. Kannikal's clinical privileges in light of unacceptable performance. FCI reviewed that decision in November 1998. Based on the review, Dr. Kannikal received a letter on February 2, 1999, proposing his removal for loss of medical privileges, failure to follow instructions, and absence without leave. On June 2, 1999, Warden Bobby Shearin issued a decision letter removing Dr. Kannikal from his position. On the same day, the warden also proposed a settlement agreement, which held Dr. Kannikal's removal in abeyance for sixty days provided that he satisfactorily complied with the terms of the agreement.

In the settlement agreement, Dr. Kannikal agreed to comply with a program to improve his performance and to waive "any and all appeal and grievance rights, relating to the underlying charges proposed in this matter on February 2, 1999, including, but not limited to, the Merit Systems Protection Board." The warden had previously discussed this option with Dr. Kannikal and his union representative. After the sixty days passed, Dr. Leonard and the Health Services Administrator determined that Dr. Kannikal's clinical skills and knowledge did not meet appropriate standards. FCI again denied Dr. Kannikal's medical privileges. Consequently, FCI removed Dr. Kannikal.

On appeal to the Board, Dr. Kannikal argued that the settlement agreement was proposed in bad faith and signed under duress. Specifically, Dr. Kannikal alleged that FCI gave him no time to consider the agreement. Moreover, he was afraid of losing his job. Finally, according to Dr. Kannikal, FCI did not give him the opportunity to have an attorney review the agreement.

The Board noted, however, that FCI first proposed Dr. Kannikal's removal on

February 2, 1999. FCI gave him an opportunity to respond. Moreover, Dr. Kannikal obtained union representation throughout the removal process, including during several discussions with the warden before June 2, 1999, regarding the settlement agreement.

Dr. Kannikal also argued that FCI breached the settlement agreement by subjecting him to unreasonable scrutiny, by failing to give him guidance and encouragement, and by only allowing him to examine one inmate per day instead of two. The Board found no evidence that FCI unreasonably treated Dr. Kannikal. While only one examination per day might have been a breach, the Board determined that any potential breach was not material in light of FCI's unchallenged assertion that "mock" examinations were taking up too much time to allow for two per day. Because Dr. Kannikal did not show that FCI materially breached the settlement agreement or that bad faith or duress tainted the settlement, the Board concluded that Dr. Kannikal did not show Board jurisdiction. Without an otherwise appealable action, the Board concluded it had no jurisdiction to hear Dr. Kannikal's discrimination or retaliation allegations.

Dr. Kannikal appeals. On appeal, Dr. Kannikal argues that FCI gave him no prior notice that he would be terminated on June 2, 1999, and that he had no time to consider the settlement agreement or seek legal advice. Moreover, Dr. Kannikal alleges that although he and the union representative sought modification and deletion of terms, FCI refused to alter the final settlement agreement. Because he had no lawyer present, Dr. Kannikal contends that "it cannot be construed that he signed the [settlement agreement] with informed consent and with the knowledge that his future rights to appeal would be waived." Moreover, according to Dr. Kannikal, FCI was clearly aware of his depres-

sion and anxiety disorder, affecting his ability to make informed decisions under stress.

Arguing that the FCI acted in bad faith and breached the settlement agreement, Dr. Kannikal asserts that he was subjected to excessive and unreasonable scrutiny of his work without proper guidance about performance deficiencies. Dr. Kannikal also alleges that FCI denied him the opportunity to fully perform two "mock" examinations per day during a period of thirty-two days. Due to this material breach of the agreement, according to Dr. Kannikal, the Board incorrectly ignored his discrimination claims. On that note, Dr. Kannikal also argues that FCI improperly denied discovery regarding his alleged medical deficiencies and information on other physician's assistants. Finally, Dr. Kannikal contends that his August 26, 1999 Notice of Removal informed him of his appeal rights, including the option of appealing to the Board. Thus, according to Dr. Kannikal, that Notice superseded the June 2, 1999 settlement agreement and its alleged waiver of appeal. This court has jurisdiction to review the Board's dismissal under 28 U.S.C. § 1295(a)(9) (1994).

## DISCUSSION

Title 5 requires this court to sustain the Board's decisions unless they are arbitrary, capricious, not in accordance with law, obtained without procedures required by rule, law, or regulation, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984). The Board's determination of its jurisdiction to adjudicate a particular appeal is a question of law, which this court reviews without deference. *Herman v. Dep't of Justice*, 193 F.3d 1375, 1378 (Fed.Cir.1999); *Middleton v. Dep't of Defense*, 185 F.3d 1374, 1379 (Fed.Cir.1999). A party appealing to

the Board has the burden of proving, by a preponderance of the evidence, that the Board has jurisdiction. *Forest v. Merit Sys. Prot. Bd.,* 47 F.3d 409, 410 (Fed.Cir. 1995); 5 C.F.R. § 1201.56(a)(2).

■ A federal employee can waive his right to appeal his termination to the Board in a settlement agreement. *Gibson v. Dep't of Veterans Affairs,* 160 F.3d 722, 725 (Fed.Cir.1998); *Stewart v. United States Postal Serv.,* 926 F.2d 1146 (Fed. Cir.1991); *McCall v. United States Postal Serv.,* 839 F.2d 664, 667 (Fed.Cir.1988). The Board may enforce such agreements unless obtained under fraud, duress or confusion. *Gibson,* 160 F.3d at 725; *Link v. Dep't of Treasury,* 51 F.3d 1577, 1582 (Fed.Cir.1995).

■ As an initial matter, Dr. Kannikal has admitted that he and his union representative sought modification and deletion of terms of the settlement agreement prior to June 2, 1999. Moreover, Dr. Kannikal received the February 2, 1999 letter initially proposing his removal. At any time after February 2, and particularly after he became aware of the settlement agreement option (i.e., when he sought modification of the agreement terms), Dr. Kannikal was free to obtain legal counsel. Dr. Kannikal offers no explanation or evidence to show that union representation was his only alternative. Furthermore, Dr. Kannikal offers no evidence that his depression disorder rendered him unable to retain counsel or understand the settlement agreement. Under the terms of that document, Dr. Kannikal agreed "to waive any and all appeal ... rights, relating to the underlying charges proposed ... on February 2, 1999, including, but not limited to, the Merit Systems Protection Board."

■ The Board fully addressed Dr. Kannikal's assertions of excessive and unreasonable scrutiny, disrespectful treatment, and insufficient guidance about deficiencies. The Board also explained that FCI did not materially breach the settlement agreement by denying him opportunity to fully perform two "mock" examinations per day. In light of the Board's thorough factual findings, this court detects no error in the Board's conclusion that it lacked jurisdiction. Dr. Kannikal offered no convincing evidence of duress, bad faith or breach by the FCI. Thus, Dr. Kannikal waived his right to appeal to the Board when he signed the settlement agreement. Moreover, because the Board did not have jurisdiction over his appeal regarding the settlement agreement, it had no basis to consider his allegation of discrimination or reprisal (or assertions regarding discovery based on those allegations). An allegation of discrimination or reprisal standing alone does not provide an independent ground for appeal to the Board. *Price v. United States Postal Serv.,* 50 M.S.P.R. 107, 110 (1991).

Because the Board properly dismissed Dr. Kannikal's appeal for lack of jurisdiction, this court affirms.