**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1803
_____

JOE A. KANNIKAL,

Appellant

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.: 3-12-cv-00220)
District Judge:  Honorable Kim R. Gibson
_____

Argued on November 18, 2014

(Opinion filed: January 20, 2015)

Before:  RENDELL, JORDAN and NYGAARD, Circuit
Judges

Faye Riva Cohen, Esquire **(Argued)**
Law Office of Faye Riva Cohen, P.C.
2047 Locust Street
Philadelphia, PA 19103

Counsel for Appellant

Stuart F. Delery, Esquire
Assistant Attorney General
David J. Hickton, Esquire
United States Attorney
Marleigh D. Dover, Esquire
Stephanie R. Marcus, Esquire **(Argued)**
Civil Division, Room 7642
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Rebecca R. Haywood, Esquire
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

Counsel for Appellee

## OPINION

**RENDELL,** <u>Circuit Judge</u>:

## I. **Introduction**

The District Court dismissed Joe Kannikal's suit against his former employer, the Federal Bureau of Prisons, as untimely based on the six-year statute of limitations set forth in 28 U.S.C. § 2401(a). The parties initially framed their arguments assuming the applicability of this limitation but, at our urging, have addressed whether this limitation should apply. We conclude that the dismissal cannot stand, as the six-year statute of limitations contained in § 2401(a) does not apply to suits brought under Title VII, and Kannikal's suit was timely. The Government also makes an additional argument in support of the dismissal, namely that Kannikal waived the right to sue. We disagree. Accordingly, we will vacate the District Court's order and remand for further proceedings in the District Court.[1]

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  Background

The Bureau of Prisons terminated Kannikal on September 3, 1999.  On April 20, 2001, Kannikal filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), but he did not receive an administrative hearing until 2006.  Kannikal's case was then held in abeyance because it was considered part of a pending class action complaint.  In 2007, the Department of Justice informed Kannikal that his case would no longer be held in abeyance and suggested that he contact the EEOC.  Kannikal asked the EEOC about his case status in 2008 and 2009, but he never received a response, let alone a final decision.  He filed this civil action on March 28, 2012.

The Government filed a motion to dismiss for lack of subject matter jurisdiction, arguing that § 2401(a) barred this action because over six years had passed since Kannikal's cause of action accrued.  Section 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  Under Title VII, a claimant may file suit 180 days after filing the initial charge.  42 U.S.C. § 2000e-16(c).  The District Court held that Kannikal's cause of action accrued on October 17, 2001, i.e., 180 days after he filed his EEOC complaint, and expired six years later based on § 2401(a).  It ruled that it would not apply the equitable tolling principles that Kannikal sought because § 2401(a) represents a limited waiver of the federal government's sovereign immunity and courts cannot expand that waiver.  Therefore, it did not consider whether equitable tolling would otherwise have been warranted on the facts of this case.

On appeal, we questioned the parties' assumption that a general six-year limit would apply, notwithstanding Title VII's specific scheme regarding the timing of civil actions, and we asked the parties to provide supplemental briefing on this issue.

Kannikal argues that applying § 2401(a) would undermine Title VII's administrative process by forcing claimants to abandon the administrative process when the six-year deadline approaches. He also asserts that the more specific statute, namely Title VII, should prevail over the more general statute, i.e., § 2401(a). The Government argues that Kannikal waived this issue by failing to raise it before the District Court or in his opening brief. The Government also urges that § 2401(a) should apply because its language encompasses every civil action commenced against the United States; this Court cannot expand the waiver of sovereign immunity in § 2401(a); § 2401(a) and Title VII do not conflict; and there must be an outer limit on how long a claimant can engage in the administrative process before losing his right to file suit.

### III.   Whether § 2401(a) Applies

We first address our ability to have raised, sua sponte, the issue of whether § 2401(a) applies to Title VII. The Government argues that we need not address this argument because Kannikal waived it. We disagree. "It is appropriate for us to reach an issue that the district court did not if 'the issues provide purely legal questions, upon which an appellate court exercises plenary review.'" *N.J. Carpenters v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 305 (3d Cir.

5

2014) (quoting *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998)). No court of appeals has ever applied § 2401(a) to bar a civil action under Title VII,[2] and we will not refuse to address this issue on the basis of waiver. "[I]t is within our discretion to consider an issue that the parties did not raise below." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals . . . ."). While it is true that ordinarily an appellate court will not consider an issue that was not raised below, that practice exists so that "parties may have the opportunity to offer all the evidence they believe relevant" and so that "litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). In this case, however, we address an important issue regarding the interplay between two statutory provisions, not a matter implicating the introduction of evidence. Furthermore, we ordered two rounds of supplemental briefing and discussed this issue extensively at oral argument, thus giving the parties ample opportunity to present their positions.

---

[2] With this Opinion, we align ourselves with the only other appeals court to consider this issue, the Court of Appeals for the D.C. Circuit, which recently held that "28 U.S.C. § 2401(a) does not apply to Title VII civil actions brought by federal employees." *Howard v. Pritzker*, Nos. 12-5370, 12-5392, --- F.3d ---, 2015 WL 64565, at *1 (D.C. Cir. Jan. 6, 2015).

6

Our analysis must begin with the text of Title VII. Title VII has a detailed, specific provision regarding the limitation of actions, 42 U.S.C. § 2000e-16(c). It states:

> Within 90 days of receipt of notice of final action taken by a department, agency, or unit . . . or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin . . . or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action . . . .

42 U.S.C. § 2000e-16(c). This scheme sets forth a specific starting point—namely, that a claimant may file suit 180 days after filing his initial charge. It also sets a specific outer limit—namely, that a claimant has 90 days in which to file suit after receiving a final agency decision. Here, there was no final agency decision, so the 90-day period was never

7

activated. Thus, the real issue is whether there is a limit as to how long a claimant can await the conclusion of the administrative process before filing suit. The statute provides no such limit. Section 2000e-16(c) specifically provides that "after one hundred and eighty days from the filing of the initial charge . . . *until such time as final action may be taken* . . . , an employee . . . , if aggrieved . . . by the failure to take final action on his complaint, may file a civil action." 42 U.S.C. § 2000e-16(c) (emphasis added). It permits an aggrieved party to file suit any time after 180 days have passed *until there is a final decision.* The final decision then triggers the 90-day outer limit.

The specificity of Title VII's limitations scheme convinces us that § 2401(a) does not apply. "[I]t is a commonplace of statutory construction that the specific governs the general . . . ." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992). "That is particularly true where . . . 'Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions.'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). The specific limitation period here is 90 days after the agency issues a final decision.

The Court of Appeals for the Eighth Circuit addressed a similar situation in *Bruno v. United States*, wherein a party seeking a tax refund argued that § 2401(a) defined the relevant limitations period, rather than 26 U.S.C. § 6511, the statute setting forth the timeliness requirements for a tax refund suit. 547 F.2d 71, 73 (8th Cir. 1976). It held that "§ 2401 does not apply to actions for tax refunds, which are

8

governed by the more specific period of limitation set forth in . . . the Internal Revenue Code." *Id.* It emphasized that "the general language of 28 U.S.C. § 2401 must yield to the more specific terms of § 6511." *Id.* at 74. Moreover, as we previously held regarding Title VII, "[w]here . . . Congress explicitly provides a limitations period in the text of the statute, that period is definitive." *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 472 (3d Cir. 2001). In *Burgh*, we held that Pennsylvania's statute of limitations was inapplicable to Title VII suits because Title VII contains the "congressional determination of the relevant and proper time limitations . . . . The imposition of an additional limitations period is inconsistent, and indeed in direct conflict, with the plain language of the federal statute." *Id.* Here, applying § 2401(a) would directly conflict with Title VII's "until such time" provision. *See Howard v. Pritzker*, Nos. 12-5370, 12-5392, --- F.3d ---, 2015 WL 64565, at *6 (D.C. Cir. Jan. 6, 2015) ("[T]here is an irreconcilable conflict such that the specific time limits, 42 U.S.C. § 2000e-16(c), trumps the general limitations period, 28 U.S.C. § 2401(a) . . . .").

The Government argues that § 2401(a) represents a limited waiver of the federal government's sovereign immunity that we may not expand. This argument lacks merit. "[F]ederal courts do not have jurisdiction over suits against the United States unless Congress, via a statute, . . . waives the United States' immunity to suit." *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000). "When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). We are not expanding the sovereign immunity waiver in § 2401(a) because Congress

chose to enact 42 U.S.C. § 2000e-16. In other words, the statute that permits employment discrimination suits against the federal government specifies the conditions under which such suits are permissible. We are simply interpreting the statute of limitations, namely § 2000e-16(c), that Congress mandated in Title VII. That specific statute governs, and § 2401(a) is inapplicable.

The Supreme Court has emphasized that Title VII provides "an exclusive, *pre-emptive* administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976) (emphasis added). In *Brown*, the Supreme Court upheld the dismissal of a federal employee discrimination suit that was filed after Title VII's deadlines expired. It held that Title VII was the exclusive remedy for federal employment discrimination and rejected the petitioner's argument that he should be able to seek relief under the Civil Rights Act of 1866 and the Declaratory Judgment Act, in addition to Title VII. It noted "[t]he balance, completeness, and structural integrity" of the 1972 amendments that incorporated relief for federal employees into Title VII, reasoning that those amendments "provide[] for a careful blend of administrative and judicial enforcement powers" and establish a "careful and thorough remedial scheme." *Id.* at 832-33. By virtue of the comprehensive and distinctive nature of its remedial scheme, Title VII itself clearly signals that it, and not § 2401(a), should control. *See also Howard*, 2015 WL 64565, at *8 ("With Congress's determination of the appropriate time limits in which a federal employee 'may file a civil action,' it would be, given the context, structure and purpose of Title VII, fundamentally inconsistent with the statutory scheme to impose an artificial six-year time limit.").

10

The legislative history of Title VII also demonstrates that Congress did not intend to foreclose the administrative process. Indeed, Congress encouraged use of the administrative process, while also providing an escape valve from EEOC delays by permitting civil actions to be brought after 180 days. The House Report for § 2000e-16 commented on the difficult pressures presented by the EEOC's "burgeoning workload, accompanied by insufficient funds and a shortage of staff" and explained that "the private right of action . . . provides the aggrieved party a means by which he may be able to escape from the administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process." H. R. Rep. No. 92-238, at 12 (1971). Congress intended to give the aggrieved party a means by which he *may*, not *must*, escape. While Congress envisioned the civil action as an escape mechanism, there is nothing to suggest that it would approve of pressuring claimants to resort to the civil action and forego the administrative process.

The House Report acknowledged that litigation, whether in court or in the administrative process, is time-consuming, and Congress expected that claimants would not abandon the administrative process only to encounter equally time consuming procedures in court:

> The complexity of many of the charges, and the time required to develop the cases, is well recognized by the committee. It is assumed that individual complainants, who are apprised of the need for the proper preparation of a complex complaint involving multiple issues and extensive discovery

procedures, would not cut short the administrative process merely to encounter the same kind of delays in a court proceeding. It would, however, be appropriate for the individual to institute a court action where the delay is occasioned by administrative inefficiencies. The primary concern must be protection of the aggrieved person's option to seek a prompt remedy in the best manner possible.

*Id.* at 13. The House Report thus reflects an awareness of the potential delays in the administrative process, as well as an assumption that complainants would allow the administrative process to unfold. The "primary concern," as noted, was the protection of the complainant's right to obtain relief "in the best manner possible." *Id.*

The Senate Committee similarly explained that "the committee believes that the aggrieved person should be given an opportunity to escape the administrative process when he feels his claim has not been given adequate attention" and that "[t]he primary concern should be to protect the aggrieved person's option to seek a prompt remedy." S. Rep. No. 92-415, at 23-24 (1971). An analysis presented to the Senate with the Conference Report emphasized that "as the individual's rights to redress are paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief." 118 Cong. Rec. 7168. It would be incongruous, given Congress' emphasis on claimants' rights and its statement that it is "necessary" to leave "all avenues" open for relief, to hold that a complainant

12

is foreclosed if he is patient and awaits agency action that takes longer than six years. *Id.*

We cannot imagine that Congress intended to penalize claimants for EEOC delays. Applying § 2401(a) would do just that. If, after awaiting a final agency decision for 180 days plus six years, a claimant no can longer bring suit, then he would be barred from relief. This case proves the point: the problematic delays, whereby the EEOC did not respond to Kannikal's inquiries and did not provide a final decision, occurred *after* six years had passed.[3] Thus, we conclude that applying § 2401(a) to Title VII actions is inconsistent with Congress' intent.

The Supreme Court's analysis of Title VII's legislative history further confirms our view. Congress prioritized claimants' rights by "afford[ing] an aggrieved person the option of withdrawing his case from the EEOC if he was dissatisfied with the rate at which his charge was being processed." *Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 362 (1977).[4] In *Occidental*, the EEOC sued a

---

[3] Kannikal provided several hypothetical examples of the perversity of applying § 2401(a). For example, a claimant may receive a favorable decision from an administrative judge close to the six-year mark. If he waits to see whether the agency will implement the favorable decision, then he risks losing his right to seek recourse in court. If he goes to court, however, then he must abandon the favorable decision.

[4] *Occidental* addressed a private-employer, not a federal-employer, case; however, because both the statutes of limitation that apply to private- and public-employers permit

private employer, who argued that the suit was untimely. The employer urged that the EEOC was barred from bringing an enforcement suit by not doing so within 180 days after the employee filed the charge. Reading the relevant provision of Title VII carefully, the Supreme Court affirmed the ruling of the Court of Appeals for the Ninth Circuit that the 180-day period set forth in the statute was not a limitation, but, rather, was a time period after which the complainant could elect to seek relief through a private enforcement action. It held that the 180-days provision means that "[i]f a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court." *Id.* at 361.

The Supreme Court concluded that "final and conclusive confirmation of the meaning" of the 180-days provision was in the analysis presented to the Senate with the Conference Report stating that the private right of action "'is designed to make sure that the person aggrieved does not

---

claimants to file suit after 180 days, it is apposite. *See* 42 U.S.C. § 2000e-5(f)(1). The Government argues that our holding is "particularly anomalous" because "Title VII provisions governing private sector claims allow employees only 90 days to file suit in district court after receiving notice that the EEOC has decided not to pursue the administrative charge." (Gov't 1st Supp. Br. 13.) This comparison is inapt. Title VII limits both private and public employees to 90 days to file suit *after* receiving notice of a decision. Here, we consider whether § 2401(a) limits a public employee's right to file suit *before* a final decision issues.

14

have to endure lengthy delays . . . . It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the . . . EEOC.'" *Id.* at 365-66 (quoting 118 Cong. Rec. 7168 (1972)). It explained that "Congressional concern over delays . . . was resolved by providing complainants with the *continuing opportunity* to withdraw their cases from the EEOC and bring private suits." *Id.* at 369 n.25 (emphasis added). There is nothing to indicate that this "continuing opportunity" has a cut-off point. Indeed, the concept of a "continuing opportunity" supports the opposite conclusion, i.e., that this opportunity continues *until* the EEOC issues a final decision.[5] While Congress provided the complainant a

---

[5] We note that Congress did not list the EEOC after the "until such time" clause in § 2000e-16(c). After that clause, the statute lists only "a department, agency, or unit," which is different from the 180-days clause, which refers to "department, agency, or unit or . . . the EEOC." In other words, Title VII permits a claimant to file suit 180 days after filing the initial charge with the department, agency, unit, or EEOC, but the "until such time" clause refers only to final action taken by the department, agency, or unit. The absence of the EEOC in this list may create some ambiguity as to whether Congress intended a different outcome for cases that are lingering before the EEOC. But the legislative history is pellucid: Congress prioritized claimants' rights by enabling them to escape administrative quagmires at the EEOC. "In resolving ambiguity, we must allow ourselves some recognition of the existence of sheer inadvertence in the legislative process." *Cass v. United States*, 417 U.S. 72, 83 (1974) (quoting *Schmid v. United States*, 436 F.2d 987, 992 (Ct. Cl. 1971) (Nichols, J., dissenting)). We conclude that the

way to avoid lengthy delays, it did not, on the other hand, express any objection to a claimant's decision to await agency action.

The Government presents three specific attacks that we must address. First, the Government argues that § 2401(a) does not preclude a claimant from seeking relief but, instead, simply requires a claimant to choose between the administrative and judicial forums when the case is approaching six years in the administrative process. However, in reality, the Government's position would leave no choice at all—a claimant running up against the six-year limit would have to bring a civil action or be forever barred. The Government has not identified any language in Title VII or the legislative history indicating that Congress intended to force such an election between the two forums, let alone to force abandonment of the administrative process. Congress "hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the . . . EEOC." 118 Cong. Rec. 7168; *see also Burgh*, 251 F.3d at 473 ("[T]he limitations scheme provided for in Title VII is consistent with Congress's intent that most complaints be resolved through the EEOC rather than by private lawsuits."). Applying § 2401(a) does not cohere with that aspiration because claimants would be forced to abandon the administrative process to preserve their judicial rights. And they would then begin all over again developing the record with all its

"until such time" provision applies to complaints lingering in the EEOC administrative process and the absence of EEOC after "until such time" was inadvertent.

complexities. *See Howard*, 2015 WL 64565, at *8 (Section 2401(a) does not apply to Title VII suits because "for employees who wished to remain on the administrative path, Congress set no outer time limit, choosing instead to provide a ninety-day window following final agency action" and because "[s]etting an outer time limit would reorder the incentives that encourage administrative resolution.").

Thus, applying § 2401(a) is directly contrary to the notion, in the Title VII context, that "the court must neither undermine the EEOC's capacity to investigate charges of discrimination, nor undercut congressional policy of favoring reliance by plaintiffs 'on the administrative process of the EEOC.'" *Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 77 (3d Cir. 1986) (citation omitted) (quoting *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1257 (5th Cir. 1979)).[6] Applying § 2401(a) would undermine the administrative process because most claimants would abandon the EEOC process to avoid § 2401(a)'s bar. Furthermore, administrative resources would have been wasted during the period prior to abandoning the administrative process. We therefore reject

---

[6] *Waddell* was a laches case. It noted that "plaintiffs have some obligation to monitor the progress of their charge and do not have the absolute right to await termination of EEOC proceedings where it would appear to a reasonable person that no administrative resolution will be forthcoming . . . ." 799 F.2d at 77. The issue here is simply whether § 2401(a) applies, and we take no position on the length of EEOC delays in terms of assessing the diligence element of the laches analysis, which was the issue in *Waddell*.

17

the Government's argument that § 2401(a) requires parties to choose between the administrative and judicial forums.

Second, the Government argues that § 2401(a) applies here because it does not specifically exclude Title VII. The statute provides that "[e]xcept as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years . . . ." 28 U.S.C. § 2401(a). Section 2401(a) thus has only one explicit exception, and that is "chapter 71 of title 41," which refers to Contract Disputes Act cases. The Government urges that the reference to a specific exception, i.e., "chapter 71 of title 41," means that no *other* exceptions apply and that "every civil action" means exactly what it says. The Government also notes that, although § 2401(a) predates Title VII, Congress amended 2401(a) to add the Contract Disputes Act exception in 1978, after Title VII was enacted, and it did not add any explicit exception for Title VII. *See* Contract Disputes Act of 1978, Pub. L. No. 95-563, § 14(b), 92 Stat. 2383, 2389 ("Section 2401(a) . . . is amended by striking out 'Every' at the beginning and inserting in lieu thereof 'Except as provided by the Contract Disputes Act of 1978, every'.").

This argument lacks merit, however, because, notwithstanding the "every civil action" language of Title VII, § 2401(a) does not always apply. For example, it does not apply to tax refund suits. *Bruno*, 547 F.2d at 74. Nor does it apply to Quiet Title Act ("QTA") suits. *See* 28 U.S.C. § 2409a(g) ("Any civil action under this section . . . shall be barred unless it is commenced within twelve years of the date upon which it accrued."); *United States v. Beggerly*, 524 U.S. 38, 41-42 (1998) ("The QTA includes a 12-year statute of

18

limitations . . . ."). Therefore, other statutes of limitations govern certain civil actions against the United States, even though those statutes of limitations are not specifically excepted in § 2401(a) itself. Title VII is just another example of this.

Section 2401(a) is meant to apply when other limitations periods are lacking, which is certainly not the case here. The Court of Appeals for the Tenth Circuit applied § 2401(a) to a case under the Administrative Procedure Act ("APA") because "[i]n the *absence of a specific statutory limitations period*, a civil action against the United States under the APA is subject to the six year limitations period found in 28 U.S.C. § 2401(a)." *Nagahi v. INS*, 219 F.3d 1166, 1171 (10th Cir. 2000) (emphasis added); *see also United States v. Minor*, 228 F.3d 352, 359 (4th Cir. 2000) (describing § 2401(a) as "a catch-all provision; it establishes a general limitations period for civil lawsuits against the United States not otherwise covered by a more specific limitations period."); *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990) ("Neither the Public Land Orders nor the [APA] contain a specific statute of limitations; thus, the general civil action statute of limitations, 28 U.S.C. § 2401(a), applies."). In sum, courts apply § 2401(a) where there is no separate limitations period in the statute; by contrast, Title VII specifically provides that a claimant may file suit after 180 days "until such time" as there is a final decision. Section 2401(a)'s general limitation must yield to Title VII's specific regime.

Third, the Government argues that there must be "some outer limit" to the time period in which Kannikal can come to federal court, that § 2401(a) is the applicable outer

19

limit, and that only shorter, but not longer, limitations periods are permissible. It is true that some cases have referred to § 2401(a) as an outer limit. *See, e.g.*, *Price v. Bernanke*, 470 F.3d 384, 388 (D.C. Cir. 2006) ("[Section] 2401(a) sets an outside time limit . . . ."); *Lavery v. Marsh*, 918 F.2d 1022, 1026 (1st Cir. 1990) ("[Section] 2401(a) is a general statute of limitations setting an outside time limit on suits against the United States."). However, it is not *always* the outer limit. We need only reference the QTA to prove the point: it allows a longer limitations period than § 2401(a) provides, i.e., twelve years instead of six. We agree that there must be an outer limit for Title VII actions, but that limit is not contained in § 2401(a). Rather, the limit is tied to the final agency action.

In *Occidental*, the Supreme Court specifically rejected the notion that a time limitation not clearly set forth in Title VII could apply to limit the EEOC's right to file enforcement suits on behalf of private claimants. The employer argued that, if Title VII did not limit the time during which the EEOC could bring enforcement suits, then the most analogous state statute of limitations should apply. The Supreme Court rejected this argument, noting that "Congress did express concern for the need of time limitations in the fair operation of [Title VII], but that concern was directed entirely to the initial filing of a charge with the EEOC and prompt notification thereafter to the alleged violator." *Occidental*, 432 U.S. at 371. It emphasized that "[n]othing in [Title VII] indicates that EEOC enforcement powers cease if the complainant decides to leave the case in the hands of the EEOC rather than to pursue a private action." *Id.* at 361. The absence of an outer limit defined in years is consistent with Title VII's overall scheme: "that the only statute of

limitations discussions in Congress were directed to the period preceding the filing of an initial charge is wholly consistent with [Title VII]'s overall enforcement structure" because "[w]ithin this procedural framework, the benchmark, for purposes of a statute of limitations, is not the last phase of the multistage scheme, but the commencement of the proceeding before the administrative body." *Id.* at 372. Title VII's scheme emphasizes a claimant's initial steps and preserves the claimant's options. It does not concern itself with an outer limitation defined in years.

The Government's concern for an outer limit is all the more perplexing when we consider that this limit is totally within its control. Once the agency issues a final decision, the limitation period is quite short, only 90 days. Any lengthy delays are therefore attributable to the Government. It would be unreasonable to hold that the Government's own delays can protect it from Title VII lawsuits. The Government also asserts that § 2401(a) remedies the problem of claimants who fail to participate in the administrative process or fail to prosecute their claims. This, too, is unpersuasive. Other remedies, such as laches or dismissal for failure to prosecute, exist when a claimant fails to pursue his claims. We need not penalize all claimants who suffer EEOC delays merely to target those who have not been diligent.

In sum, we hold that § 2401(a) does not apply to Title VII actions. Section 2000e-16(c) allows a claimant to escape the administrative process anytime "until such time" as there is a final decision. Title VII has a specific, comprehensive scheme, and specific schemes trump general statutes. Congress intended that the Title VII scheme would be preemptive. The absence of outer limits on the administrative

process is consistent with that scheme, particularly because Congress intended to prioritize claimants' rights, despite EEOC delays, by providing an escape hatch. Moreover, § 2401(a) does not apply to "every civil action," particularly when there is a specific structure of deadlines. And, finally, applying § 2401(a) would undermine the administrative process, which Congress intended to be the primary mechanism for addressing discrimination complaints.[7]

## IV. The LCSA Does Not Apply

The Government also argues that Kannikal's signing of a Last Chance Settlement Agreement ("LCSA") bars this action because the Bureau of Prisons agreed to postpone his termination and provide him improvement opportunities in exchange for his waiver of his appeal rights.[8] We disagree with the Government's interpretation of the LCSA.

The LCSA provides that Kannikal "agrees . . . to waive any and all appeal and grievance rights, relating to the underlying charges proposed in this matter on February 2, 1999, including, but not limited to, the Merit Systems Protection Board, Equal Employment Opportunity

---

[7] Because we hold that § 2401(a) does not apply, we do not address whether § 2401(a) is subject to equitable tolling, which is the primary issue that the parties raised on appeal.

[8] The District Court did not address this argument because it held that it lacked subject matter jurisdiction under § 2401(a). We consider it here because § 2401(a) does not apply, the parties briefed the issue, and the LCSA is in the record.

Commission . . . for a period ending June 2, 2000." (J.A. 22.) The LCSA's plain language shows that Kannikal's waiver applied only until June 2, 2000. He filed his complaint with the EEOC on April 20, 2001, and, thus, the LCSA does not apply.

At oral argument, the Government argued that the June 2, 2000 date meant that Kannikal could *never* appeal discriminatory behavior relating to the termination in this case, but he could challenge *future* discriminatory behavior occurring *after* June 2, 2000. In other words, the Government argued that the June 2, 2000 date was intended to show that Kannikal was not waiving his rights to challenge future discrimination, but was permanently waiving his rights to appeal the proposed termination. This argument contradicts the LCSA's plain language, which states that Kannikal "agrees . . . to waive any and all appeal and grievance rights, *relating to the underlying charges* . . . for a period ending June 2, 2000." (J.A. 22 (emphasis added).) The LCSA specifically states that the June 2, 2000 date applies to appeals "relating to the underlying charges," not to future discriminatory behavior. The Government's interpretation contradicts the LCSA's plain and clear language, and that language is dispositive. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 249 (3d Cir. 2007) ("[W]e interpret documents in accord with their plain language.").

The Government also argues that res judicata bars Kannikal from pursuing this appeal. On September 30, 1999, Kannikal appealed his termination to the Merit Systems Protection Board ("MSPB"). He appealed to the MSPB before June 2, 2000, i.e., during the time period in which the

LCSA prohibited him from appealing. The MSPB held that the LCSA barred his appeal. The Court of Appeals for the Federal Circuit upheld this decision, holding that "this court detects no error in the Board's conclusion that it lacked jurisdiction." *Kannikal v. Dep't of Justice*, 25 F. App'x 874, 877 (Fed. Cir. 2001). Res judicata does not bar Kannikal from pursuing the instant action because he filed his EEOC appeal after the LCSA waiver expired and because the MSPB only addressed the LCSA, not the merits of Kannikal's termination claim.[9]

In short, the LCSA does not apply after June 2, 2000. Kannikal filed his EEOC charge on April 20, 2001. Neither the LCSA nor the Federal Circuit decision bars this suit.

## V. Conclusion

Section 2401(a) does not apply to Title VII actions. Kannikal was terminated in 1999 and has sought relief for over a decade. While we offer no opinion regarding the merits of his case, we do conclude that § 2401(a) and the LCSA do not preclude this suit. We will vacate the District Court's judgment and remand for further proceedings consistent with this Opinion.

---

[9] Appellee also argues that Kannikal is collaterally estopped from challenging the LCSA's validity. We need not reach that issue because the LCSA does not apply, and so its validity is irrelevant.