(Slip Opinion)

# Harmonizing the Professional Responsibility and Work Opportunity Reconciliation Act of 1996 and Section 214 of the Housing and Community Development Act of 1980

Federal housing assistance programs under section 214 of the Housing and Community Development Act of 1980 provide "Federal means-tested public benefits" within the meaning of the Professional Responsibility and Work Opportunity Reconciliation Act of 1996.

Alien applicants for federal housing benefits administered under section 214 must satisfy both PRWORA's and section 214's eligibility requirements. Section 214's detailed verification scheme remains effective for all benefits administered under that section.

February 18, 2026

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

This Office recently interpreted the phrase "Federal means-tested public benefit" in the Professional Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2105 (codified in relevant part as amended at 8 U.S.C. § 1601 *et seq.*), as including "any federal public benefit for which the eligibility . . . for benefits, or the amount of such benefits, or both, are determined on the basis of income, resources, or financial need," *Interpretation of "Federal Means-Tested Public Benefit" in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996*, 49 Op. O.L.C. __, at *8 (Dec. 16, 2025) ("*Means-Tested Benefits*").

That broad definition would, on its face, appear to encompass federal housing assistance that the Department of Housing and Urban Development ("HUD") administers under section 214 of the Housing and Community Development Act of 1980 ("section 214"), Pub. L. No. 96-399, § 214, 94 Stat. 1614, 1637 (codified in relevant part as amended at 42 U.S.C. § 1436a). But there has long been "uncertainty surrounding how the eligibility requirements of PRWORA and Section 214 interact, leading to conflicting interpretations of the categories of noncitizens eligible for certain housing programs." Maggie McCarty & Alison Siskin, Cong. Rsch. Serv., RL31753, *Immigration: Noncitizen Eligibility for Needs-Based Housing Programs* at 1 (updated Dec. 8, 2015), https://www.congress.gov/crs-product/RL31753 [https://perma.cc/UEA8-Q58Y]. For that reason,

1

HUD has asked this Office how the alien eligibility and verification requirements for Federal means-tested public benefits under PRWORA interact with the overlapping but distinct requirements under section 214.

We read PRWORA and section 214 as imposing complementary but distinct requirements, both of which must be satisfied to obtain federal housing benefits. Although there are some distinctions, none create an irreconcilable conflict such that compliance with both statutes is impossible. Accordingly, only aliens who are both "qualified" under PRWORA *and* eligible under section 214 may obtain federal housing benefits administered under section 214. After providing the relevant statutory background, this opinion confirms that section 214 housing programs are "Federal means-tested public benefits" under PRWORA and explains how PRWORA and section 214 may be read in harmony, both as to their eligibility categories and conditions and their verification procedures.

## I.

### A.

Congress enacted the Housing and Community Development Act of 1980 to address urban decay, stimulate housing construction, and support local community development. In section 214 of the Act, Congress "established the first federal restrictions on noncitizen eligibility for federal housing" benefits. Maggie McCarty & Abigail F. Kolker, Cong. Rsch. Serv., R46462, *Noncitizen Eligibility for Federal Housing Programs* at 4 (updated Jan. 23, 2023), https://www.congress.gov/crs-product/R46462 [https://perma.cc/2EXP-ZRZR] ("CRS, *Federal Housing Programs*"). Section 214 covers several major housing assistance programs that "provide direct rental or homeownership assistance to low-income families," including public housing, Housing Choice Vouchers, and Section 8 project-based housing. *Id.*

Under section 214(a) and "[n]otwithstanding any other provision of law," the Secretary "may not make financial assistance available for the benefit of any alien unless that alien is a resident of the United States" and falls within one of seven enumerated categories based on immigration status. 42 U.S.C. § 1436a(a). These include aliens lawfully admitted for permanent residence, *see id.* § 1436a(a)(1); aliens deemed lawfully admitted for permanent residence under 8 U.S.C. § 1259, *see* 42 U.S.C.

§ 1436a(a)(2); refugees and asylees, *see id.* § 1436a(a)(3); humanitarian parolees, *see id.* § 1436a(a)(4); aliens granted withholding of removal, *see id.* § 1436a(a)(5); aliens with adjusted status for temporary or permanent residence under 8 U.S.C. § 1255a, *see* 42 U.S.C. § 1436a(a)(6); and aliens from Freely Associated States, *see id.* § 1436a(a)(7).[1]

Section 214 as originally enacted did not have verification provisions. But Congress added these requirements in later statutes, including some postdating PRWORA. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, div. C, §§ 574–76, 110 Stat. 3009-546, 3009-685–88 (codified as amended at 42 U.S.C. § 1436a(d)–(e), (i)); Pub. L. No. 105-276, § 592, 112 Stat. 2461, 2653 (1998).

## B.

In 1996, a bipartisan Congress enacted PRWORA as comprehensive welfare reform legislation. "Before PRWORA, the authorizing statute for each federal benefit program generally established its immigration-related eligibility criteria or lack thereof." Ben Harrington, Cong. Rsch. Serv., R46510, *PRWORA's Restrictions on Noncitizen Eligibility for Federal Public Benefits: Legal Issues* at 1 (Sept. 3, 2020) ("CRS, *Legal Issues*"), https://www.congress.gov/crs-product/R46510 [https://perma.cc/V5HP-XG9D]. Thus, "[a] major purpose of PRWORA was to establish a set of restrictive, uniform rules that would apply across a broad spectrum of federal benefit programs." *Id.* at 2.

Title IV of PRWORA addresses aliens' access to federal, state, and local public benefits, with the express aim of reducing welfare incentives fueling migration to the United States. *See* 8 U.S.C. §§ 1601–1646. Despite the national policy that "aliens within the Nation's borders not depend on public resources," Congress concluded that aliens were "applying for and receiving public benefits" at "increasing rates." *Id.* § 1601(2)(A), (3). Congress identified the "[c]urrent eligibility rules for public assistance" as "wholly incapable of assuring that individual aliens

---

[1] Of these categories, only the one for resident aliens from Freely Associated States was added after PRWORA's enactment. *See* Pub. L. No. 106-504, § 3(b), 114 Stat. 2309, 2312–13 (2000) (codified at 42 U.S.C. § 1436a(a)(7)).

not burden the public benefits system" and "enact[ed] new rules for eligibility . . . to assure that aliens be self-reliant." *Id.* § 1601(4)–(5).

Under title IV, only "qualified alien[s]," *id.* § 1641(b), are eligible for most federal, state, and local public benefits "[n]otwithstanding any other provision of law," *see id.* §§ 1611(a), 1612(a), 1621(a). PRWORA defines "Federal public benefit" to include "any . . . assisted housing" or "similar benefit for which payments or assistance are provided" through federal funds. *Id.* § 1611(c)(1). Aliens who do not satisfy the definition of "qualified alien" are ineligible for public benefits unless an exception applies. And importantly, "[q]ualified aliens are not automatically eligible for federal benefit programs; they are still subject to all eligibility and availability restrictions of the program." CRS, *Federal Housing Programs* at 6.

Section 1641(b) lists categories of aliens, based largely on immigration status, who are "qualified alien[s]." Currently, these categories include lawful permanent residents, *see* 8 U.S.C. § 1641(b)(1); asylees, *see id.* § 1641(b)(2); refugees, *see id.* § 1641(b)(3), (b)(6);[2] humanitarian parolees, *see id.* § 1641(b)(4); aliens granted withholding of removal, *see id.* § 1641(b)(5); Cuban and Haitian entrants, *see id.* § 1641(b)(7);[3] resident aliens from Freely Associated States, *see id.* § 1641(b)(8);[4] and battered

---

[2] Congress has extended qualification to some other categories of aliens to the same extent as refugees under PRWORA. These include certain victims of trafficking, *see* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 107(b)(1)(A), 114 Stat. 1464, 1475 (codified as amended at 22 U.S.C. § 7105(b)(1)(A)); certain Afghan parolees, *see* Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. No. 117-43, § 2502, 135 Stat. 344, 377 (2021) (codified as amended at 8 U.S.C. § 1101 note); and certain Ukrainian parolees, *see* Additional Ukraine Supplemental Appropriations Act, 2022, Pub. L. No. 117-128, § 401, 136 Stat. 1211, 1218 (codified as amended at 8 U.S.C. § 1101 note).

[3] The Balanced Budget Act of 1997 amended PRWORA to include Cuban and Haitian entrants. *See* Pub. L. No. 105-33, § 5302(c), 111 Stat. 251, 599–600 (codified at 8 U.S.C. §§ 1613(b)(1)(D), 1622(b)(1)(D), 1641(b)(7)).

[4] Congress amended PRWORA to add this category in 2020. *See* Consolidated Appropriations Act, 2021 ("2021 CAA"), Pub. L. No. 116-260, § 208(c), 134 Stat. 1182, 2985 (2020) (codified as amended at 8 U.S.C. § 1641(b)(8)). Prior to this change, this Office had left unresolved whether non-resident aliens under the Compacts of Free Association were "'qualified aliens' as defined by 8 U.S.C. § 1641(b)." *See Effect of the Alienage Restriction in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 on the Provision of Stafford Act Assistance in the Federated States of Micronesia and the Republic of the Marshall Islands*, 25 Op. O.L.C. 21, 23 n.2 (2001). Congress's

spouses or children of U.S. citizens or lawful permanent residents under the Violence Against Women Act of 1994 ("VAWA self-petitioners"), *see id.* § 1641(c).[5]

Title IV further conditions qualified aliens' eligibility for public benefits. With some exceptions, qualified aliens generally must wait five years after entering the United States with qualified status before they may obtain any Federal means-tested public benefit. *Id.* § 1613(a). Title IV also attributes the income and resources of an alien's sponsor and the alien's spouse to the alien for purposes of calculating the alien applicant's financial status. *Id.* § 1631(a). And aside from PRWORA's narrow exceptions, title IV's eligibility limits apply "[n]otwithstanding any other provision of law." *Id.* §§ 1611(a), 1613(a), 1621(a), 1631(a).

To enforce these safeguards, title IV of PRWORA requires the Attorney General to promulgate regulations "requiring verification that a person applying for a Federal public benefit . . . is a qualified alien and is eligible to receive such benefit." *Id.* § 1642(a)(1). States administering federal public benefits must implement verification systems pursuant to federal regulations. *Id.* § 1642(a)(3), (b).

## C.

A cloud of "doubt has persisted over the relationship between PRWORA and the slightly divergent eligibility criteria in Section 214." CRS, *Legal Issues* at 11. Unlike PRWORA, section 214 does not include VAWA self-petitioners or Cuban and Haitian entrants in its list of eligible aliens. *See* 42 U.S.C. § 1436a(a); CRS, *Federal Housing Programs* at 7. Over the years, however, HUD has treated these categories of aliens as eligible for section 214 benefits. *See* Memorandum for Julián Castro,

---

targeted extension of PRWORA to treat as "qualified alien[s]" those who "lawfully reside[] in the United States in accordance with a Compact of Free Association," 2021 CAA § 208(c), 134 Stat. at 2985, indicates that *non-resident* aliens under such Compacts are not "qualified," *cf. Esteras v. United States*, 145 S. Ct. 2031, 2040 (2025) (applying the "well-established canon of statutory interpretation: *expressio unius est exclusio alterius*—in plain English, expressing one item of an associated group or series excludes another left unmentioned" (cleaned up)).

[5] Congress amended PRWORA one month after its enactment to include VAWA self-petitioners. *See* IIRIRA § 501, 110 Stat. at 3009-670 (codified as amended at 8 U.S.C. §1641(c)).

Secretary, HUD, from Tonya Robinson, Acting General Counsel, HUD, *Re: Eligibility of Battered Noncitizen Self-Petitioners for Financial Assistance under Section 214 of the Housing and Community Development Act of 1980* at 2 (Dec. 15, 2016) ("2016 HUD Memo"), https:// niwaplibrary.wcl.american.edu/wp-content/uploads/Eligibility-of-VAWA-Self-Petitioners-2016-12-14.pdf [https://perma.cc/N52Q-XVNR] (instructing that VAWA self-petitioners are eligible for section 214 benefits); HUD, *HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs* ¶ 3-32 (updated Nov. 27, 2013), https://www.hud.gov/sites/documents/43503hsgh.pdf [https://perma.cc/ AA47-FD5C] (treating "Cuban\Haitian entrant" as an eligible immigration status); CRS, *Federal Housing Programs* at 8 (observing that "administratively, aliens who are qualified under PRWORA" are "being treated as eligible under Section 214 programs").

But while HUD has extended PRWORA's broader eligibility categories to section 214 programs, it has historically failed to impose any of PRWORA's restrictive conditions on those programs. Relying on a 1997 opinion from this Office, *see Proposed Agency Interpretation of "Federal Means-Tested Public Benefit[s]" Under Personal Responsibility and Work Opportunity Reconciliation Act of 1996*, 21 Op. O.L.C. 21, 21–22 (1997), HUD concluded that none of its programs were "Federal means-tested public benefits," *see* Eligibility Restrictions on Noncitizens: Inapplicability of Welfare Reform Act Restrictions on Federal Means-Tested Public Benefits, 65 Fed. Reg. 49,994, 49,994 (Aug. 16, 2000). In November 2025, however, HUD reversed its finding and issued a notice that "interpret[ed] PRWORA to apply to all HUD programs related to public or assisted housing" programs "unless a more specific federal statute applies, *e.g.* Section 214 of the Housing and Community Development Act of 1980, as amended." Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit", 90 Fed. Reg. 54,363, 54,364 (Nov. 26, 2025) ("2025 HUD Notice").

In December 2025, in response to a request by the Department of Health and Human Services ("HHS"), this Office published an opinion interpreting "Federal means-tested public benefit" in PRWORA. *See generally Means-Tested Benefits*. We withdrew our 1997 interpretation of that phrase, which had applied *Chevron* deference to HHS's and HUD's then-existing view. *See id.* at *7. We then opined that "Federal means-

tested public benefit" is best read as including "any federal public benefit for which the eligibility . . . for benefits, or the amount of such benefits, or both, are determined on the basis of income, resources, or financial need," regardless of whether the federal funding is from a mandatory or discretionary spending program. *Id.* at *8.

HUD has now asked this Office for an opinion explaining the relationship between PRWORA and section 214. HUD has asked whether PRWORA applies to section 214 programs at all, and has noted that a federal regulation permits agencies to determine whether the welfare programs they administer constitute Federal means-tested public benefits. *See* 8 C.F.R. § 213a.1.

## II.

We construe federal laws harmoniously to effectuate Congress's enactments to the extent possible, particularly when statutes address the same subject. *See, e.g.*, *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 622–23 (2011) (plurality opinion); *Access of Department of Justice Inspector General to Certain Information Protected from Disclosure by Statute*, 39 Op. O.L.C. 12, 20 (2015). We are "not at liberty to pick and choose among congressional enactments," *Morton v. Mancari*, 417 U.S. 535, 551 (1974), and "deeming two statutes to conflict is a disfavored construction," *Howard v. Pritzker*, 775 F.3d 430, 437 (D.C. Cir. 2015) (internal quotation marks omitted). Even when statutory provisions are in tension, we will not read one statute as superseding the other unless the conflict is irreconcilable. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976).

PRWORA and section 214 are compatible. PRWORA comprehensively governs eligibility for and administration of Federal public benefits, including those that are means-tested. Section 214 programs are "Federal means-tested public benefits" under PRWORA. Read together, PRWORA imposes *additional* conditions on federal benefits under section 214, not alternative conditions. The statutory requirements are additive, not conflicting, because it is possible to fulfill the requirements of both statutes. We first explain why section 214 programs are "Federal means-tested public benefits" subject to PRWORA. We then address the two statutes' eligibility categories and conditions before finally considering their verification procedures.

### A.

HUD programs administered under section 214 are "Federal means-tested public benefits" within the meaning of PRWORA. A "Federal public benefit" under PRWORA is broadly defined to include, among other things, "any retirement, welfare, health, disability, *public or assisted housing*, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States." 8 U.S.C. § 1611(c)(1)(B) (emphasis added). And as we have explained, a "Federal means-tested public benefit" is "any federal public benefit for which the eligibility of an individual, household, or family eligibility unit for benefits, or the amount of such benefits, or both, are determined on the basis of the income, resources, or financial need of the individual, household, or unit." *Means-Tested Benefits* at *8.

Each of the housing and rental assistance programs that HUD administers under section 214 satisfies these definitions. Eligibility in the programs turns on income, the assistance amount is calculated using income, and in some cases, the agencies require periodic income reexaminations and impose net-asset restrictions on applicants for assistance.

Programs created by the Housing Act of 1937 are means-tested. For example, "[d]welling units assisted" under the federal public-housing program may be "rented only to families who are low-income families at the time of their initial occupancy of such units." 42 U.S.C. § 1437a(a)(1). "[L]ow-income families" is defined to mean "families whose incomes do not exceed 80 per centum of the median income for the area." *Id.* § 1437a(b)(2)(A). And the program uses an income-based rent-calculation formula. *Id.* § 1437a(a)(1). HUD regulations also confirm that public housing applicants "must be income-eligible . . . and must meet the net asset and property ownership restriction requirements." 24 C.F.R. § 960.201(a)(1). "No family other than a low income family is eligible for admission to a [Public Housing Agency's] public housing program." *Id.* § 960.201(a)(2).

So too with Section 8 project-based housing programs: "[A]ssistance payments may be made only with respect to a dwelling unit under lease for occupancy by a family determined to be a lower income family at the

time it initially occupied such dwelling unit." 42 U.S.C. § 1437f(c)(4). While all Section 8 project-based units must be rented to low-income families, a percentage of dwelling units are reserved for "extremely low-income families," which is defined as those families whose incomes do not exceed the higher of either the poverty guidelines or "30 percent of the median family income for the area." *Id.* § 1437a(b)(2)(C). The Housing Choice Vouchers program is similarly means-tested. *See id.* § 1437f(*o*)(4); *see also* 24 C.F.R. § 982.201(a). And eligibility for the voucher program is subject to ongoing income review. *See* 42 U.S.C. § 1437f(*o*)(5)(A).

Other programs administered under section 214 are also means-tested. Eligibility and tenant rent for the direct-loan program for the elderly and disabled is keyed to income. *See* 12 U.S.C. § 1701q(c), (d)(1). Assistance related to section 235 of the National Housing Act is limited by family income and is adjusted periodically based on recipient income recertifications. *See id.* § 1715z(a)(2)(B)(i), (f), (h)(2). So too tenant eligibility and rental assistance under section 236 of that Act. *See id.* § 1715z-1(f)(1)(B)(i), (f)(2), (i)(2). And finally, both eligibility and the amount of assistance under section 101 of the Housing and Urban Development Act of 1965 is keyed to income. *See id.* § 1701s(c)–(d), (e)(2).

HUD does not dispute that PRWORA facially applies "to all HUD programs related to public or assisted housing," and that programs administered under section 214 would ordinarily qualify as "Federal public benefit[s]" under PRWORA. *See* 2025 HUD Notice, 90 Fed. Reg. at 54,364. And 8 C.F.R. § 213a.1 comports with this understanding. That regulation permits federal agencies to identify welfare programs that are "Federal means-tested public benefits" under PRWORA. *Id.* But agencies cannot override the statute—they must still adhere to the best reading of PRWORA's statutory term when making their determinations. Opinions from this Office interpreting federal law—including our recent opinion interpreting "Federal means-tested public benefit" in PRWORA—are "controlling, authoritative and binding within the Executive Branch, unless overruled or withdrawn." *Means-Tested Benefits* at *6 n.2 (cleaned up) (quoting *Campaign for Accountability v. U.S. Dep't of Just.*, 155 F.4th 724, 731 (D.C. Cir. 2025)). Federal law does not enable HUD to exempt section 214 programs from PRWORA's ambit through regulatory action.

## B.

PRWORA and section 214 impose two types of qualifications: (1) eligible categories of aliens and (2) eligibility conditions placed on aliens. Under both PRWORA and section 214, an alien must first fall within an eligible category to qualify for Federal public benefits, generally based on his immigration status. If an alien satisfies this threshold requirement, then he must meet other eligibility conditions, such as financial need and minimum residency. The following table summarizes the relationship between the two statutes, which we explain in greater detail below:

| | *PRWORA Qualified* | *Section 214 Eligible* | *Both Qualified and Eligible* |
|---|---|---|---|
| *Lawful permanent residents* | Qualified. *See* 8 U.S.C. § 1641(b)(1). | Eligible. *See* 42 U.S.C. § 1436a(a)(1), (2), (6). | Yes, after five-year bar. *See* 8 U.S.C. § 1613(a). |
| *Asylees* | Qualified. *See* 8 U.S.C. § 1641(b)(2). | Eligible. *See* 42 U.S.C. § 1436a(a)(3). | Yes. *See* 8 U.S.C. § 1613(b)(1)(B). |
| *Refugees* | Qualified. *See* 8 U.S.C. § 1641(b)(3), (b)(6). | Eligible. *See* 42 U.S.C. § 1436a(a)(3). | Yes. *See* 8 U.S.C. § 1613(b)(1)(A). |
| *Parolees* | Qualified, if paroled for at least one year. *See* 8 U.S.C. § 1641(b)(4). | Eligible. *See* 42 U.S.C. § 1436a(a)(4). | Yes, if paroled for at least one year and after five-year bar. *See* 8 U.S.C. § 1613(a). |
| *Aliens granted withholding of removal* | Qualified. *See* 8 U.S.C. § 1641(b)(5). | Eligible. *See* 42 U.S.C. § 1436a(a)(5). | Yes. *See* 8 U.S.C. § 1613(b)(1)(C). |
| *Cuban/Haitian entrants* | Qualified. *See* 8 U.S.C. § 1641(b)(7). | Not eligible. | No. |
| *Resident aliens from Freely Associated States* | Qualified. *See* 8 U.S.C. § 1641(b)(8). | Eligible. *See* 42 U.S.C. § 1436a(a)(7). | Yes. *See* 8 U.S.C. § 1613(b)(3). |
| *VAWA self-petitioners* | Qualified. *See* 8 U.S.C. § 1641(c). | Not eligible. | No. |
| *Grandfathered aliens receiving pre-PRWORA benefits* | Qualified. *See* 8 U.S.C. § 1613(a). | Not eligible. | No. |

**1.**

The two statutory lists of alien categories overlap except for three groups included under only PRWORA—VAWA self-petitioners, Cuban and Haitian entrants, and otherwise ineligible aliens who were receiving benefits as of August 22, 1996, the date of PRWORA's enactment (*i.e.*, grandfathered aliens receiving pre-PRWORA benefits). *Compare* 8 U.S.C. § 1641(b)–(c), *with* 42 U.S.C. § 1436a(a). PRWORA's categories of "qualified aliens" is therefore broader than section 214's categories of eligible aliens. Although PRWORA and section 214 both apply to the same Federal public benefits (housing assistance), whatever differences exist between covered categories of aliens do not create an irreconcilable conflict because both statutes operate to *limit* eligibility.

Section 214 provides that, "[n]otwithstanding any other provision of law," if an alien does not fall within one of its eligibility categories, then the Secretary "*may not* make financial assistance available" to them. 42 U.S.C. § 1436a(a) (emphasis added). PRWORA is equally clear: "Notwithstanding any other provision of law," an alien "who is not a qualified alien" is "*not eligible* for any Federal public benefit." 8 U.S.C. § 1611(a) (emphasis added). In other words, both section 214 and PRWORA restrict who may receive federal benefits. PRWORA's "notwithstanding" clause indicates that it overrides any contrary legal provisions. *See Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."); *Andreiu v. Ashcroft*, 253 F.3d 477, 482 (9th Cir. 2001) ("[A] notwithstanding any other provision of law" clause "trumps any contrary provision elsewhere in the law." (alteration accepted)). But section 214 is not contrary to PRWORA. PRWORA acts as a *ceiling* on alien eligibility unless Congress subsequently specifies otherwise; it is not also a *floor* requiring that *all* "qualified aliens" under PRWORA may receive federal benefits.[6]

---

[6] "There is no question that PRWORA does not apply in instances where Congress overrides it expressly in a later statute." CRS, *Legal Issues* at 18; *see also* Children's Health Insurance Program Reauthorization Act of 2009, Pub. L. No. 111-3, § 214(a)(2), 123 Stat. 8, 56 (codified at 42 U.S.C. § 1396b(v)(4)(A)) (allowing States to provide certain medical assistance "notwithstanding sections 401(a), 402(b), 403, and 421 of

PRWORA and section 214 are best read as two distinct but interlocking sets of requirements for federal housing benefits, both of which must be satisfied for an alien to receive benefits. "Although there is considerable overlap and some disparity between the two provisions . . . , compliance with either of the statutes does not appear to render compliance with the other impossible or compel disobedience to it." *Gulf War Veterans Health Statutes*, 23 Op. O.L.C. 49, 56 (1999). In a similar context, we opined that two statutes with different deadlines for the same reporting requirement did not irreconcilably conflict because the government could comply with both statutes by following the more restrictive deadline. *Id.* at 58. The same logic applies here. HUD can satisfy both PRWORA *and* section 214 by adhering to the more restrictive list of eligible aliens in section 214 without violating any command in PRWORA.

Because whatever tension may exist between the categories in PRWORA and those in section 214(a) does not amount to an irreconcilable conflict, we do not read PRWORA as impliedly repealing or amending section 214. "[W]hen two statutes are capable of coexistence, it is the duty of" interpreters "to regard each as effective." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143–44 (2001). We infer an

---

[PRWORA]"). Whether Congress has implicitly superseded PRWORA in a later-enacted statute is a more difficult and context-dependent question, and courts have divided in various cases. *Compare Oakley v. Devos*, No. 4:20-CV-03215, 2020 WL 3268661, at *15–16 (N.D. Cal. June 17, 2020) (holding that PRWORA likely does not restrict emergency financial aid under the CARES Act), *and Noerand v. Devos*, 474 F. Supp. 3d 394, 403 (D. Mass. 2020) (same), *with Washington v. DeVos*, No. 2:20-CV-00182, 2020 WL 4275041, at *6 (E.D. Wash. July 24, 2020) (holding that PRWORA restricts eligibility for CARES Act aid), *and Poder in Action v. City of Phoenix*, 481 F. Supp. 3d 962, 971–72 (D. Ariz. 2020) (same); *see also New York v. U.S. Dep't of Just.*, 804 F. Supp. 3d 294, 325 (D.R.I. 2025) (holding that the Health Center Program statute likely superseded PRWORA under the general-specific canon and as a later enactment), *appeal filed*, No. 25-2099 (1st Cir. Nov. 10, 2025).

Here, Congress may have superseded PRWORA when it amended section 214 in 2000 to make resident aliens from Freely Associated States eligible. *See* Pub. L. No. 106-504, § 3(b), 114 Stat. at 2312–13. If it were otherwise, the amendment would have had no effect. PRWORA's "notwithstanding" clause would not necessarily control this later-enacted and more-specific provision, but neither would Congress's 2000 amendment revive section 214(a)'s "notwithstanding" clause to supersede PRWORA except as to subsection (a)(7), the amended provision. We need not reach that question, however, because Congress ultimately extended PRWORA "qualified alien" status to resident aliens from Freely Associated States in 2020. *See* 2021 CAA § 208(c), 134 Stat. at 2985.

implied amendment or repeal "only if necessary to make the later enacted law work, and even then only to the minimum extent necessary." *Radzanower*, 426 U.S. at 155 (cleaned up). That high bar is not met here.

Because there is no real conflict between PRWORA and section 214's eligibility categories, we need not resort to the general-specific canon. That canon is "most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). It is most useful where—unlike here—the two provisions are "interrelated and closely positioned, both in fact being parts of the same statutory scheme." *Id.* (cleaned up) (quoting *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) (per curiam)). But interpreters resort to the general-specific canon only when statutory "overlap . . . create[s] an irreconcilable conflict." *Kemp v. United States*, 142 S. Ct. 1856, 1863–64 (2022); *see also Nat'l Cable & Telecomms. Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 335–36 (2002) ("It is true that specific statutory language should control more general language when there is a conflict between the two. Here, however, there is no conflict.").

Although section 214 is more specifically tailored to the programs administered under that section, it does not irreconcilably conflict with the categories of PRWORA "qualified aliens." And both provisions can be harmonized without creating the "superfluity" that might arise if the "specific provision" (section 214) were "swallowed by the general one" (PRWORA). *RadLAX*, 566 U.S. at 645. After all, section 214(a) limits the eligible categories of aliens more narrowly than PRWORA in several respects. Unfortunately, however, HUD has in practice extended federal housing benefits to categories of aliens who are ineligible under the interlocking statutory requirements.[7]

---

[7] In 2016, HUD interpreted section 214 to impliedly cover VAWA self-petitioners, "consistent with Section 214 and VAWA's objectives to enhance victim safety." 2016 HUD Memo at 2. HUD noted that section 214 makes lawful permanent residents eligible for housing assistance and that VAWA self-petitioners are statutorily authorized to apply for lawful permanent residence. *Id.* at 1. HUD reasoned that because section 214 assistance "cannot be delayed, denied, reduced or terminated on the basis of immigration status while verification of eligibility or appeal of a determination as to satisfactory

**2.**

PRWORA adds eligibility conditions not included in section 214—for example, the five-year waiting period for most qualified aliens to receive Federal means-tested benefits and the requirement that the finances of an alien's sponsor and those of an alien's spouse be included in calculating the alien applicant's finances. *See* 8 U.S.C. §§ 1613(a), 1631(a).[8]

Just as with eligible categories of aliens, PRWORA's additional eligibility conditions are compatible with section 214. Section 214 provides that seven categories of aliens may be eligible for housing assistance benefits. Applying PRWORA's eligibility conditions does not alter section 214's list of eligible classes; it simply adds requirements. Those same categories of aliens may receive section 214 benefits if they satisfy PRWORA's eligibility conditions. In other words, PRWORA places additional conditions on *when* or *how* aliens may receive benefits but does not contradict section 214's status-based (or categorical) limitations on eligibility.

For example, "[n]otwithstanding any other provision of law," PRWORA requires that "the income and resources of the alien shall be

immigration status is pending," VAWA self-petitioners are eligible for housing benefits "until a final determination by DHS as to [lawful permanent residence] status is actually made." *Id.* at 1–2.

But section 214 does not support this reading for multiple reasons. First, VAWA self-petitioners definitionally are not yet lawful permanent residents—they are authorized to *petition* for such status. Indeed, PRWORA confirms that Congress views VAWA self-petitioners as distinct from lawful permanent residents for welfare purposes. As originally enacted, PRWORA covered lawful permanent residents as "qualified aliens." Congress then amended PRWORA to include VAWA self-petitioners as "qualified aliens"—an addition that would be superfluous if "lawful permanent residents" included VAWA self-petitioners. *See* IIRIRA § 501, 110 Stat. at 3009-670–71. Second, section 214(d)(4)—which prohibits delay, denial, reduction, or termination of assistance pending status verification—applies while administrators verify applicants' status *for benefits*. It does not cover aliens awaiting status determinations in immigration proceedings.

Although this result may be unfortunate as a policy matter, "[n]ot every harsh result indicates a contradiction that must be 'reconciled' away." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 181 (2012).

[8] The PRWORA eligibility conditions listed here are merely examples. Our analysis applies equally to all PRWORA eligibility *conditions* for aliens because section 214 only limits eligible *categories* of aliens. Nothing in section 214 is rendered inoperative by PRWORA's additional eligibility conditions.

deemed to include" that of the alien's sponsor and spouse (if any). 8 U.S.C. § 1631(a). While most programs administered under section 214 already calculate an alien's income to include the earnings of the alien's spouse, *see, e.g.*, 42 U.S.C. § 1437a(b)(4), they do not explicitly consider those of an alien's sponsor, if applicable. PRWORA requires such attribution of income and thereby adds an additional condition on the calculation of the alien's income for purposes of program eligibility.

As before, there is no real statutory conflict between PRWORA and section 214, so the general-specific canon does not come into play. *See Kemp*, 142 S. Ct. at 1863–64; *Gulf Power*, 534 U.S. at 335–36. But even if PRWORA's eligibility conditions were construed as conflicting with section 214, that canon would not apply here. True, when two statutes irreconcilably conflict, the more specific statute typically governs the general one, regardless of enactment priority. *See Radzanower*, 426 U.S. at 153 (citing *Mancari*, 417 U.S. at 550–51). But even in the context of a single statutory scheme, where the canon is most useful, "the general/specific canon is not an absolute rule" and it "can be overcome by textual indications that point in the other direction"—where the general should control over the specific. *RadLAX*, 566 U.S. at 646–47. Such textual indications are present here. First, Congress enacted a clear statement of purpose to supersede pre-existing eligibility rules it deemed ineffective and to create uniform and restrictive eligibility conditions for Federal public benefits. *See* 8 U.S.C. § 1601(4)–(5). Second, Congress repeatedly included clear statements that PRWORA's restrictions apply "[n]otwithstanding any other provision of law." *Id.* § 1611(a); *id.* § 1613(a) (same); *id.* § 1631(a) (same).

"Notwithstanding" clauses, or *non obstante* clauses, have long been used "to specify the degree to which a new statute was meant to repeal older, potentially conflicting statutes in the same field." *PLIVA*, 564 U.S. at 621–22 (plurality opinion); *see also Cisneros*, 508 U.S. at 18 ("[A] clearer statement" of congressional intent "to supersede all other laws" is "difficult to imagine."). This Office has frequently recognized *non obstante* clauses as clear statements that a statute controls even against more specific preexisting laws. *See, e.g.*, *Disposition of Proceeds from the Sale of Government Buildings Acquired with Social Security Trust Funds*, 34 Op. O.L.C. 263, 269–73 (2010); *Brady Act Implementation Issues*, 20 Op. O.L.C. 57, 62–63 (1996). Thus, even if there were a con-

flict and the general-specific canon applied, PRWORA's eligibility criteria—such as its five-year waiting period for most qualified aliens—would still apply to federal housing benefits administered under section 214. *See United States v. DeCay*, 620 F.3d 534, 540 (5th Cir. 2010) (rejecting application of the general-specific canon because a "'notwithstanding any other Federal law' clause signals a clear Congressional intent to override conflicting federal law").[9]

## C.

To ensure that only eligible recipients receive benefits, both PRWORA and section 214 impose verification requirements on administrators of Federal public benefits. The respective verification provisions differ primarily in detail, but there is no irreconcilable conflict between them.

Recall that Congress's concern in enacting PRWORA was to address ineffective eligibility rules across a broad swathe of federal welfare programs, not to craft verification requirements for specific programs. *See* 8 U.S.C. § 1601(4)–(5). Commensurate with that focus, PRWORA does not prescribe specific verification procedures. Instead, it instructs the Attorney General to promulgate regulations "requiring verification" of applicant eligibility, which shall, "to the extent feasible, require that information requested and exchanged be similar in form and manner to [the requirements of] section 1320b-7 of title 42," which pertain to Social Security benefits. *Id.* § 1642(a)(1). It also requires the Attorney General to issue regulations establishing procedures for States to verify alien-applicant eligibility and obligates States administering Federal public benefits to implement a "verification system that complies with the regulations." *Id.* § 1642(a)–(b).

Section 214, by contrast, establishes a reticulated verification process that requires sworn written declarations of satisfactory immigration status, specific immigration documentation, and verification through the

---

[9] One might argue that "income" as defined by the section 236 below-market rent program precludes attribution of an alien sponsor's income because it provides that "any amounts not actually received by the family may not be considered as income under this subsection." 12 U.S.C. § 1715z-1(m). For the reasons explained above, however, PRWORA would supersede to the extent of any conflict as the later-enacted provision containing a *non obstante* clause, and thus an alien sponsor's income must be deemed to be part of the applicant's income. *See* 8 U.S.C. § 1631(a).

Department of Homeland Security. *See* 42 U.S.C. § 1436a(d)(1)–(3). It also outlines an appeal process for verification determinations, *id.* § 1436a(d)(5), and limits the liability of entities and of state and local governments that follow section 214 procedures when verifying eligibility, *id.* § 1436a(e)–(f). Notably, Congress strengthened and added to section 214's more-specific verification requirements just one month after it enacted PRWORA. *See* IIRIRA §§ 574, 576, 110 Stat. at 3009-685–88.

Once again, there is no conflict between the statutory verification procedures: HUD can comply with both PRWORA and section 214. Indeed, PRWORA's generalized requirement to implement a verification system is complemented by section 214's specific procedures facilitating such verification for housing assistance programs.

True, PRWORA mandates that the Attorney General promulgate regulations creating verification procedures, and those regulations could potentially conflict with section 214's verification requirements. But this is both factually unlikely and legally irrelevant. Section 214's verification requirements closely track the requirements for alien-eligibility verification in 42 U.S.C. § 1320b-7—which Congress instructs the Attorney General to follow "to the extent feasible," *see id.* § 1642(a)(1), when promulgating PRWORA's implementing regulations. *Compare id.* § 1436a(d)–(f), (i) (Section 214 verification), *with id.* § 1320b-7(d)–(e) (Social Security Act verification). More importantly, federal regulations do not supersede federal statutes. *See In re Nautilus Motor Tanker Co., Ltd.*, 85 F.3d 105, 111 (3d Cir. 1996) ("[I]t is axiomatic that federal regulations can not 'trump' or repeal Acts of Congress.").

The structure of PRWORA's title IV further supports this reading. As discussed above, its eligibility provisions contain clauses mandating that these provisions control "[n]otwithstanding any other provision of law." 8 U.S.C. §§ 1611(a), 1613(a), 1621(a). But there is no such clause in PRWORA's verification provision. *See id.* § 1642. Contrasted against Congress's repeated inclusion of *non obstante* clauses in other title IV provisions—including neighboring provisions in the same subchapter, *see id.* §§ 1644, 1646—the omission of similar language from the verification provision is significant and suggests that Congress did not intend to override more-specific verification procedures in other federal statutes. After all, "we generally presume that Congress acts intentionally and purposely when it includes particular language in one section of a statute

but omits it in another." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020) (cleaned up).

To the extent that PRWORA's verification provision could be read to conflict with section 214's verification requirements, section 214's verification requirements would control as both the later-enacted and more specific statutory provisions. *See Radzanower*, 426 U.S. at 153. IIRIRA bolstered section 214's verification requirements shortly after PRWORA's enactment. Those IIRIRA amendments strengthened the verification procedures in section 214(d), *see* IIRIRA § 574, 110 Stat. at 3009-685–87, and added subsection (i) to prohibit applicants for housing benefits from obtaining "financial assistance prior to [an] affirmative establishment and verification of eligibility," *id.* § 576, 110 Stat. at 3009-687–88. That is a strong indication that Congress made *all* verification requirements in section 214 controlling to the extent they departed from PRWORA's requirements. Had the same Congress that enacted PRWORA understood it to supersede section 214's detailed verification scheme, it would never have amended and expanded that same scheme one month later.

## III.

PRWORA's alien eligibility requirements apply to any "Federal means-tested public benefit," including federal housing assistance under section 214. Aliens seeking federal housing benefits, and the officials administering these benefits, must comply with both section 214 and PRWORA. These provisions should be read as complementary rather than conflicting because compliance with both laws is possible.

As a result, grandfathered aliens receiving pre-PRWORA benefits and PRWORA "qualified aliens" under 8 U.S.C. § 1641(b)(7) and (c) are ineligible to receive housing or rental assistance benefits under section 214 programs. Eligible categories of aliens must satisfy the five-year waiting period to the same extent as required by PRWORA. *See id.* § 1613(a)–(b). And section 214's detailed verification scheme remains effective for all housing and rental assistance programs administered under that section. *See* 42 U.S.C. § 1436a(d)–(f), (i).

Some ineligible aliens may have received section 214 housing benefits based on a misinterpretation of the relationship between PRWORA and section 214. But whatever reliance may have developed based on HUD's

past practice or this Office's prior interpretation of PRWORA "cannot overcome adherence to the plain statutory text." *Means-Tested Benefits* at *19. And "American taxpayers have interests, too, in ensuring that their tax contributions" are not misused and "do not encourage illegal entry into the United States." *Id.* at *20. The statutory texts control and their commands must be enforced as written.

T. ELLIOT GAISER
*Assistant Attorney General*
*Office of Legal Counsel*